[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 3, 2010
JOHN LEY
CLERK

No. 09-10358
Non-Argument Calendar

_____

D. C. Docket No. 08-20550-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BARBARO FUENTES,
JULIANNY REYES,
EMILIO FLORES,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 3, 2010)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Barbaro Fuentes, Julianny Reyes, and Emilio Flores appeal their respective convictions for conspiring to possess with intent to distribute, and possession with intent to distribute, 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2, and the sentences imposed by the district court. For the reasons set forth below, we affirm the convictions and sentences as to each Appellant.

The case arises from a controlled drug transaction, set up with the cooperation of the Drug Enforcement Agency (DEA) and the Miami-Dade Police Department. The DEA utilized a cooperating source (Heriberto Ruiz), who recorded cell phone calls with codefendant Juan Martinez, negotiating the purchase of 7 kilograms of cocaine.[1] Using aerial surveillance, agents observed Martinez, driven by Appellant Reyes, meet with Ruiz in a shopping center parking lot in South Miami. Ruiz was wearing an audio-video recording device during this meeting.

Martinez informed Ruiz that his suppliers for the drugs, to whom he referred as "Brujeros" or "Santeros," because they purportedly practiced Santeria, were located in a residence nearby. When Ruiz refused to accompany Martinez and Reyes to the residence, Martinez made a phone call, and informed Ruiz that the

---

[1] Martinez pled guilty to the two charges against him, but Fuentes, Reyes, and Flores proceeded to trial.

transaction could be made at the shopping center, but that the deal would only involve 4 kilograms.

Following this meeting, Martinez and Reyes were observed returning to Appellant Flores's nearby apartment. When they left the apartment, Martinez was carrying a green box, and they were followed by Flores and Appellant Fuentes, who got into a van. When the four codefendants arrived at the shopping center parking lot, Martinez and Reyes parked near Ruiz, and Flores and Fuentes parked a short distance away, apparently to conduct counter-surveillance. Ruiz approached Martinez, who was in the passenger seat of Reyes's car, confirmed that the substance in the green box was cocaine, and gave law enforcement the pre-arranged take-down signal.

Martinez and Reyes were arrested in the car, and Flores and Fuentes were arrested in the van. Cell phones were seized from all four codefendants, and Flores and Reyes were found to have small amounts of cocaine in their possession. Officers conducted a protective sweep of Flores's apartment, and thereafter searched the apartment pursuant to a warrant. Nearly a kilogram of cocaine and various drug paraphernalia was found in the apartment in plain view.

We now address the several legal arguments raised by the Appellants in turn.

3

I. Fuentes's Suppression Motion

Fuentes argues that the district court erred in denying his motion to suppress evidence relating to his cell phone, which was discovered in the search incident to his arrest. Specifically, he argues that there was no probable cause to arrest him, and the subsequent search was thus unlawful.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*. Further, when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000) (citation omitted).

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (citation and quotation omitted); see also Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007) ("This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances.") (citation omitted). Where probable cause exists for an arrest, evidence obtained during a search incident to

4

arrest is admissible.  Floyd, 281 F.3d at 1348.  Moreover, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."  New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).  Accord Arizona v. Gant, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009) (reaffirming Belton as applied to facts such as these).

The district court did not err in denying Fuentes's motion to suppress, because probable cause existed for his arrest, and his cell phone was seized in a proper search incident to his arrest.  Before Fuentes was arrested, officers had obtained significant information about the drug conspiracy and his role in it.  For example, Martinez had informed Ruiz (the cooperating source)  that his cocaine suppliers – the "Brujeros," or "Santeros" – were located in Miami, on 13th Street, near 82nd Avenue (later established as codefendant Flores's apartment).  When Ruiz refused to consummate the drug transaction at the residence, Martinez called his suppliers, and a nearby shopping center was established as the alternative location.  Just prior to scheduled transaction, Martinez was observed going to Flores's apartment at 8020 Southwest 13th Street, and departing with a green box, accompanied by Fuentes, Flores, and Reyes.  Fuentes and Flores followed Reyes and Martinez to the agreed transaction point in a van, and parked nearby to conduct

counter-surveillance of the transaction.

Incident to his arrest, a cell phone was taken from Fuentes's hand. Under these facts, we find that the district court correctly ruled that probable cause existed to arrest Fuentes, and that his cell phone was admissible as having been discovered in a proper search incident to his arrest.

## II. Admission of Evidence Relating to Fuentes's Cell Phone

In an argument related to his suppression motion, Fuentes claims that the district court erred in admitting into evidence testimony that his first name, ("Barbaro"), and the number of the cell phone seized from him upon his arrest, appeared in the "contacts" list of the cell phone seized from codefendant Martinez. Fuentes argues that this testimony, permitted over his objection at trial, was inadmissible hearsay.

We review a district court's evidentiary rulings for an abuse of discretion, and may overturn findings of fact only if clearly erroneous. *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir.), *cert. denied*, Nos. 09-6730, 09-6821, and 09-6912 (S.Ct. Nov. 9, 2009). Finally, we apply a harmless error standard to erroneous evidentiary rulings. United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) ("When a trial judge has erroneously admitted evidence in a criminal prosecution, we ask whether the error had a substantial influence on the

6

outcome of a case or left grave doubt as to whether [it] affected the outcome of a case.") (citations and quotation omitted).

We have previously held that evidence offered for the limited purpose of linking coconspirators is not hearsay. United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. Unit B 1981) ("The government offered the letter for the limited purpose of linking the appellants with the vessel and with one another. The use of the letter for this limited purpose was not hearsay. The letter was not introduced to prove the truth of the matter asserted; rather it was introduced as circumstantial proof that the appellants were associated with each other and the boat.").

Fuentes fails to demonstrate clear error in the district court's admission of testimony regarding Martinez's cell phone and the contact list therein containing Fuentes's first name and the number to the cell phone that he was using. The evidence was admitted for the same reasons as the in Mayzak: to show the relationship between the co-conspirators. Even if the district court erred in admitting this evidence under either Mazyak or Rule 801(d)(2)(E), any error was harmless. In light of the other evidence introduced to establish Fuentes's participation in the drug conspiracy, including the surveillance evidence, the cell phone call records – which were admitted without objection – and Fuentes's presence in Flores's apartment immediately prior to the drug transaction, where

7

nearly a kilogram of cocaine and drug paraphernalia were in plain view, the admission of the phone contact information was harmless error, if error. See Henderson, 409 F.3d at 1300-01.

### III. Flores's Suppression Motion

Flores argues on appeal that the district court erred in denying his motion to suppress evidence seized from his apartment following his arrest, claiming that a protective sweep search of his apartment was unlawful, and that there was no valid independent source of probable cause to support the subsequent warrant.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*. Further, when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000) (citation omitted).

Searches and seizures inside a home without a search warrant are presumptively unreasonable. Id. at 1262-63 (citing Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980)). Under the independent source doctrine, however, the evidence seized is admissible if it was obtained from a lawful source, independent of the unreasonable or unlawful search. United States

8

v. Davis, 313 F.3d 1300, 1303-04 (11th Cir. 2002) (holding subsequent warrant was supported by probable cause, and not based on any information learned during prior unlawful search); cf. United States v. Chaves, 169 F.3d 687, 692-93 (11th Cir. 1999) (holding sufficient probable cause established for warrant, discounting information learned during prior unlawful search).

"Probable cause to search a residence exists when there is a fair probability that contraband of evidence of a crime will be found in a particular place. The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990) (citations and quotations omitted).

Viewing the facts in the light most favorable to the government, the district court's denial of Flores's motion to suppress was not erroneous. Having found that the sweep search of Flores's apartment was unlawful, the district court resolved the suppression dispute under the independent source doctrine. As noted by the district court, no material information learned during the prior search was used to support the subsequent search warrant, because the warrant application was supported largely by information known to the officers prior to the warrantless entry.

Prior to Flores's arrest, officers knew that their confidential source had set up a cocaine purchase with persons located at this apartment.  They also knew that the transaction was originally to involve 7 kilograms of cocaine, but only 4 kilograms were offered for sale when the transaction location was changed to a public shopping center.  Officers observed Flores's codefendants arrive at this apartment, and all four depart (Martinez carrying a green box) to consummate the drug transaction as agreed with the informant.  When officers arrested Flores and his codefendants at the shopping center, cocaine was discovered in the green box, and two small baggies containing cocaine were found on Flores.  While Paragraph 8 of the affidavit used to obtain the warrant could be read as revealing certain information that was learned during the sweep search, *e.g.*, that Flores leased the apartment, this information was *de minimus*, and probable cause was present absent this evidence.  See Chaves, 169 F.3d at 692-93 (sufficient probable cause established for warrant, discounting information learned during prior unlawful search).  Based on the above, Flores has failed to demonstrate that the district court erred in denying his motion to suppress.

IV.  Sufficiency of the Evidence Against Fuentes and Flores

Appellants Fuentes and Flores argue that the evidence was insufficient to

support their respective convictions for conspiracy to possess with intent to distribute cocaine, and possession with intent to distribute cocaine.

We review sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) ("We will not overturn a conviction on the grounds of insufficient evidence unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Finally, our Court must accept a jury's inferences and determinations of witness credibility.") (citations and quotations omitted). "Reasonable inferences, and not mere speculation, must support the jury's verdict." United States v. Perez-Tosta, 36 F.3d 1552, 1557 (11th Cir. 1994).

To convict a defendant of conspiracy to possess with intent to distribute cocaine, the government must demonstrate that the defendant knowingly and voluntarily participated in an agreement between himself and at least one other individual to commit the crime. United States v. Obregon, 893 F.2d 1307, 1311 (11th Cir. 1990) ("The government need not prove that each alleged conspirator knew all the details of the conspiracy. The government provides sufficient proof of knowledge by demonstrating the conspirator knew of the essential purpose of

11

the conspiracy."). "A person may also be found guilty of a conspiracy even if he plays only a minor role in the total scheme." Id. (citation and quotation omitted).

To convict a defendant of possession with intent to distribute cocaine, the government must prove knowledge, possession, and intent to distribute. United States v. Mercer, 541 F.3d 1070, 1076 (11th Cir. 2008), cert. denied, 129 S.Ct. 954 (2009).

Fuentes

The jury was presented with trial testimony and other evidence tending to show that Fuentes was one of the suppliers of the 4 kilograms of cocaine used in the transaction with the cooperating source and that he performed counter-surveillance at the transaction. For example, the jury heard on several occasions that the cocaine Martinez was selling was supplied by two individuals, referred to as the "Brujeros" or "Santeros." Testimony was also introduced showing that Martinez had Fuentes's name and phone number in the "contacts" section of his cell phone, and that there were multiple calls between Martinez and Fuentes on the date of the drug transaction – most of which were immediately before or after calls between Martinez and Ruiz, the cooperating source.

Testimony and surveillance video were also introduced showing that Fuentes (with Flores) followed Martinez and Reyes to the drug transaction, parking nearby

12

to conduct counter-surveillance. Further, the post-arrest search of Flores's apartment, which Fuentes had been in immediately prior to the drug transaction, yielded a significant quantity of cocaine and various drug paraphernalia in plain view.

When all inferences and credibility determinations are viewed in the light most favorable to the government, and the jury's findings similarly credited, there was sufficient evidence to conclude beyond a reasonable doubt that Fuentes was guilty on both the conspiracy count and the substantive drug count. Wright, 392 F.3d at 1273.

Flores

The jury was likewise presented with trial testimony and other evidence showing that Flores was one of the suppliers of the cocaine used in the transaction with the cooperating source, and that he performed counter-surveillance at the transaction. For example, Flores's apartment was identified by Martinez as the location of the "Brujeros" or "Santeros," who were supplying the cocaine to be bought by the cooperating source, and items associated with Santeria were found inside and outside of Flores's apartment. Also, the jury heard evidence that Martinez went to Flores's apartment to get the 4 kilograms that were to be sold to the cooperating source.

Testimony and surveillance video was introduced showing that Flores and Fuentes followed Martinez and Reyes to the drug transaction, parking nearby to conduct counter-surveillance, and the post-arrest search of Flores's apartment yielded a significant quantity of cocaine and various drug paraphernalia.

When all inferences and credibility determinations are viewed in the light most favorable to the government, and the jury's findings similarly credited, there was sufficient evidence to conclude beyond a reasonable doubt that Flores was guilty on both the conspiracy count and the substantive drug count. Wright, 392 F.3d at 1273.

## V.  Conduct of the Trial Judge

In an argument adopted by Fuentes, Reyes asserts that the trial was not fair because the trial judge repeatedly interfered in the conduct of the trial, purportedly to speed up the proceedings. Neither Reyes nor Fuentes raised any objection regarding the trial judge's conduct below, and Reyes's argument encompasses interruptions of the prosecution as well as other defense counsel.

A defendant seeking reversal based on comments or questions by the trial judge must demonstrate an abuse of discretion and prejudice. United States v. DeLaughter, 453 F.2d 908, 911 (5th Cir. 1972) (no reversible error where trial judge asked questions "pertinent and generally related to a valid inquiry into

14

material facts," which did not solely benefit the prosecution); see also United

States v. Bertram, 805 F.2d 1524, 1529 (11th Cir. 1986) ("Only when the judge's

conduct strays from neutrality is the defendant thereby denied a constitutionally

fair trial.") (citations and footnote omitted).  Where the claim was not preserved,

however, we review only for plain error.  United States v. De La Garza, 516 F.3d

1266, 1269 (11th Cir. 2008), cert. denied, 129 S.Ct. 1668 (2009).

> Under plain error review, there must be (1) an error, (2)
> that is plain, (3) that affects the defendant's substantial
> rights, and (4) that seriously affects the fairness, integrity,
> or public reputation of judicial proceedings.  Id.  For an
> error to affect substantial rights, 'in most cases it means
> that the error must have been prejudicial: It must have
> affected the outcome of the district court proceedings.'
> United States v. Olano, 507 U.S. 725, 734, 113 S.Ct.
> 1770, 1778, 123 L.Ed.2d 508 (1993). The defendant has
> the burden of persuasion as to prejudice. United States v.
> Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

Id. at 1269.

The record does not support the claim that Reyes and Fuentes were denied a

fair trial as a result of the trial judge's conduct, or that the trial judge lacked

neutrality.  By their own admission, the trial judge interrupted "virtually every

direct and cross examination," not just those conducted by defense counsel.  The

record also reflects that the trial judge corrected the questioning methods of the

government's counsel as well as defense counsel, and interposed his own

15

objections during each side's presentations. The questioning and other interruptions cited by Reyes and Fuentes were generally intended to maintain the pace of the trial.

Reyes specifically highlights the trial judge's colloquy with her counsel regarding some apparent confusion over whether certain trial exhibits had been disclosed in advance of trial. The trial record simply does not support Reyes's assertion that her counsel was subjected to "ridicule" by the judge in this regard. Finally, the trial judge specifically instructed the jury not to draw any assumptions about the evidence from his questions or actions. Based on this record, Reyes and Fuentes have not demonstrated that they were denied a fair trial conducted by a neutral judge, and have not demonstrated plain error.

## VI. Sentencing Issues

Each Appellant raises a sentencing challenge on appeal. Reyes argues that the district court erred in denying her a minor role reduction, and Fuentes and Flores argue that their respective within-guideline sentences were substantively unreasonable.

We review a sentence for procedural or substantive reasonableness. See Gall v. United States, 552 U.S. ___, ___, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); see also United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). In

16

considering the substantive reasonableness of a sentence, we employ an abuse of discretion standard "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range." Gall, 128 S.Ct. at 597. The party challenging the sentence "bears the burden of establishing that the sentence is unreasonable in the light of [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 128 S.Ct. at 596. The factors in § 3553(a) that the court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Talley, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)).

The district court shall impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of factors two through five listed above. See 18 U.S.C. § 3553(a). We have recognized that "there is a range of

17

reasonable sentences from which the district court may choose," and observed that it would ordinarily expect a sentence within the guideline range to be reasonable, though not presumptively so. Talley, 431 F.3d at 787-788. Finally, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall, 128 S.Ct. at 597.

In sentencing, the district court must avoid unwarranted sentencing disparities among defendants with similar records who are convicted of similar conduct. U.S.S.G. § 3553(a)(6). This consideration only arises where the defendants are similarly situated, however. United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009).

We review a district court's decision not to grant a minor role reduction for clear error. United States v. Rodriguez de Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The proponent of a downward adjustment bears the burden to prove a mitigating role in the offense by a preponderance of the evidence. Id. at 939. Merely being the least culpable member of a criminal conspiracy is not, standing alone, a sufficient basis for granting a minor role reduction, because it is possible for conspiracies to exist in which none are minor participants. Id. at 944.

Pursuant to U.S.S.G. § 3B1.2, a defendant is entitled to a four-point decrease

18

in her offense level if she was a minimal participant, and a two-point decrease if she was a minor participant. Whether a defendant qualifies for a decrease is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(c). A "minor participant" is a person who is "less culpable than most other participants, but whose role could not be described as minimal." Id. at cmt. n.5.

Reyes

The district court did not err in finding that Reyes failed to meet her burden regarding her request for a minor role reduction. Reyes contributed an important service in furtherance of the drug conspiracy, because she was willing to drive codefendant Martinez to and from the drug sale, when Martinez was unable or unwilling to drive himself due to an expired license tag. The jury found that based on the evidence – including that Martinez opened the box holding the cocaine in her presence, and handed her the lid – she was a knowing participant rather than merely present during the sale. The district court set forth the conduct it believed precluded a finding of a minor role in her sentencing hearing, including Reyes's presence with Martinez during phone calls negotiating the drug sale, her willingness to drive him to the deal, and the fact that the cocaine was in plain view in her car. On this record, Reyes has failed to demonstrate clear error.

Fuentes

19

The district court did not abuse its discretion in sentencing Fuentes within the guideline range. The district court adopted the facts set forth in the PSI, which Fuentes did not object to, reviewed the advisory guideline range, and considered the remaining § 3553(a) factors in arriving at its sentencing decision. Among the considerations the district court focused on in reaching Fuentes's sentence was the seriousness of the crime, which involved almost 5 kilograms of cocaine, and Fuentes's role as a supplier of the drugs. There is no basis on which to conclude that the district court made a clear error in judgment in weighing the § 3553(a) factors, and therefore, the court's decision is entitled to due deference. *See Shaw*, 560 F.3d at 1237-1238; see also Gall, 128 S.Ct. at 597. Because "there is a range of reasonable sentences from which the district court may choose," and the § 3553(a) factors supported the court's determination of an appropriate sentence in this case, the district court did not abuse its discretion and imposed a reasonable sentence. See Talley, 431 F.3d at 788.

Flores

The district court likewise did not abuse its discretion in sentencing Flores within the guideline range. The district court adopted the facts set forth in the PSI, which Flores did not object to, reviewed the advisory guideline range, and considered the remaining § 3553(a) factors in arriving at its sentencing decision.

20

Among the considerations the district court specifically identified in imposing a sentence at the top end of the guideline was the fact that Flores's apartment was used to store the cocaine supplied to Martinez for the subject drug transaction, and that almost 800 grams of cocaine and various drug paraphernalia were found in the apartment after his arrest, further indicating that he himself was dealing in drugs. Flores's argument that there was insufficient explanation for the length of his sentence is belied by the record.

The district court also did not fail to consider possible sentencing disparities among codefendants, as alleged by Flores, because it specifically discussed relative culpability at the sentencing hearing. Regardless, Flores's sentence was equal to that of Fuentes, the other supplier, and Reyes's role in the conspiracy was limited to driving Martinez from Flores's apartment to the site of the transaction, making her less culpable than Flores.

Though the district court expressly found that Flores's mental health issues did not affect his guilt or culpability, it nonetheless considered those issues as a factor in sentencing, ordering psychiatric treatment as a part of his imprisonment and supervised release. Flores's argument to the contrary is not supported by the record.

Upon review of the record and consideration of the parties' briefs, we affirm

the convictions and sentences as to each Appellant.

**AFFIRMED.**[2]

---