[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY13, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-13947
Non-Argument Calendar

_____

D. C. Docket No. 01-00009-CR-1-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRENCE JAVON FLOYD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(February 13, 2002)**

Before CARNES, HULL and COX, Circuit Judges.

PER CURIAM:

## I. FACTS AND PROCEDURAL HISTORY

Early in the morning on New Year's Day 2001, Terrance J. Floyd was arrested for public drunkenness. At the time of his arrest, Floyd was searched and ammunition was found in his pocket. Based on this finding, Floyd was charged by indictment for possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). The jury found Floyd guilty, and because his criminal history qualified him as an armed career criminal, the court sentenced him to a term of 210 months' imprisonment.

Prior to trial, Floyd moved to suppress the ammunition seized at the time of his arrest. Floyd argued that he was arrested without probable cause and that the search incident to his arrest was therefore unlawful. At the suppression hearing before the magistrate judge, Officer Thornton testified that he was dispatched to a local residence, which belonged to a friend of Floyd, following reports of gunshots. From the street near the residence, Thornton saw Floyd and several other men gathered in the backyard standing around a fire in a barrel. (R.3 at 6, 8.) Thornton entered the backyard and found spent shell casings on the ground next to the fire. (*Id.* at 6.) According to Thornton, Floyd was intoxicated, and he became boisterous and very loud. (*Id.* at 6, 8, 13.) Thornton asked Floyd to leave, which he refused to do. (*Id.* at 8.) Thornton then placed Floyd under arrest for public drunkenness. Floyd was searched and ammunition was seized from his pocket. Based on this testimony, the

2

magistrate judge found that there was probable cause to arrest Floyd for public drunkenness and recommended that Floyd's motion to suppress be denied. (R.1-42 at 1.) During trial the district court, without making explicit findings of fact, ruled that there was probable cause to arrest Floyd for public drunkenness and orally denied Floyd's motion to suppress. (R.5 at 30.)

At trial, the Government offered the testimony of Jerry Miller, a firearm and tool mark examiner for the Bureau of Alcohol, Tobacco, and Firearms, in order to establish the interstate nexus required by § 922(g). Miller testified that the ammunition seized from Floyd was manufactured by Winchester in Illinois and necessarily travelled in interstate commerce. Miller testified that he based this determination on his analysis of the ammunition and on his consultation of a Winchester catalog. (R.5 at 14-16.) Miller also testified that, in an effort to verify the information he had obtained, he contacted a technical advisor at the Association of Firearms and Tool Mark Examiners. (R.4 at 152, R.5 at 16.) Miller agreed that his determination that the ammunition was manufactured in Illinois was based in part on what he was told by the technical advisor, (R.4 at 152), and Floyd moved to strike Miller's testimony as hearsay. The court then questioned Miller to determine whether to admit his testimony. Miller affirmatively indicated to the court that it was his opinion that the ammunition was manufactured in Illinois and that the information he

3

learned from the technical advisor is of the type reasonably relied upon by experts in his field. (R.5 at 13.) The court admitted Miller's testimony, and Floyd proceeded to cross-examine Miller without further objection.

On appeal, Floyd contends that the court erred by denying his motion to suppress. According to Floyd, Thornton lacked probable cause to arrest him for public drunkenness, the search incident to his arrest was therefore unlawful, and the ammunition seized during the search should have been excluded. Floyd also contends that the court erred by admitting Miller's testimony concerning the interstate nexus required by § 922(g). Floyd contends that Miller's testimony was inadmissible for two reasons: (1) Floyd is not qualified to testify as an interstate nexus expert; and (2) Floyd's testimony constitutes inadmissible hearsay. Finally, Floyd contends that his trial counsel was ineffective for not objecting to the court's questions of Miller and for continuing to cross-examine Miller without objection.

## II. STANDARD OF REVIEW

We review the denial of a motion to suppress under a mixed standard of review, reviewing the court's findings of fact for clear error and the court's application of law to those facts de novo. *See United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000). Since Floyd did not timely object to Miller's qualifications at trial, we review for plain error. *See United States v. Novation*, 271 F.3d 968, 1014 (11th Cir. 2001). We review

4

the court's decision to admit Miller's expert testimony over Floyd's hearsay objection for abuse of discretion. *See United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir. 1998).

## III.    DISCUSSION

### A.    The Motion to Suppress

To determine whether the court erred in denying Floyd's motion to suppress, we must first determine whether Thornton had probable cause to arrest Floyd for public drunkenness. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). If we determine that Thornton had probable cause to arrest Floyd for public drunkenness, then the ammunition obtained during the search incident to Floyd's arrest is not subject to exclusion. *See Preston v. United States*, 376 U.S. 364, 367, 84 S. Ct. 881, 883 (1964). The district court properly found that Thornton had probable cause to arrest Floyd for public drunkenness, and therefore the court did not err in denying Floyd's motion to suppress.

The facts and circumstances within Thornton's knowledge at the time of Floyd's arrest support a reasonable belief that Floyd committed each element of the

public drunkenness offense. Georgia's public drunkenness statute, O.C.G.A. § 16-11-41(a), prohibits a person from "appear[ing] in an intoxicated condition in *any public place . . .* which condition is made manifest by *boisterousness*, by indecent condition or act, or by vulgar, profane, *loud*, or unbecoming language . . . ." (emphasis added). At the suppression hearing, Thornton testified that Floyd was intoxicated, that he was visible from the public street, and that he was acting loudly and boisterously. (R.3 at 8-9, 13-14.) According to Thornton, Floyd was so loud that people leaving a nearby church could have heard him. (*Id.* at 14.) Thus, at the time Floyd was arrested, Thornton could have reasonably believed that Floyd was violating each element of Georgia's public drunkenness statute. While neither the magistrate judge nor the district court made detailed findings of historical fact, their rulings implicitly credit the testimony of Thornton, and thus we credit it as well.

Floyd contends that since he was in a friend's backyard by invitation, he was not in a "public place" as required by Georgia's public drunkenness statute, and Thornton therefore could not have had probable cause to arrest him. In Georgia, however, the "public place" element of the public drunkenness statute is broadly interpreted to include any place where the defendant's conduct may reasonably be viewed by people other than members of the defendant's family or household. *See* O.C.G.A. § 16-1-3(15). *See also Ridley v. State*, 337 S.E.2d 382, 383-84 (Ga. Ct.

6

App. 1985) (upholding conviction for public drunkenness where defendant was intoxicated in his own backyard because his acts could be viewed by persons other than members of his family, including police as they came to scene). Thus, since Floyd acted in the presence of people other than members of his family, and since he was visible to Thornton from the public street, he was in a "public place" for purposes of the statute.

B.      The Admissibility of Miller's Testimony.

Floyd contends that the court erred by admitting Miller's testimony concerning the interstate nexus required by § 922(g). Floyd first contends that Miller was not qualified to testify as an interstate nexus expert. According to Floyd, Miller was only qualified to testify as an expert in firearms and tool mark examination rather than the interstate travel of ammunition. At trial, Miller testified that he has over fourteen years of experience in examining ammunition, that he has published articles in technical journals relating to firearm and tool mark identification, that he instructs at the National Firearm Examiner Academy, and that he has qualified as an expert in court "[h]undreds of times." (R.4 at 144, 148.) Miller further testified that he routinely examines ammunition to determine the manufacturer of the ammunition and that "part of my training and experience has been to know *where* things are manufactured . . . ." (R.5 at 15) (emphasis added). Thus, we conclude that the court

did not commit error, plain or otherwise, by permitting Floyd to testify as an "interstate nexus" expert.

Floyd next contends that the court erred by permitting the Government to offer Miller's hearsay testimony in order to establish the interstate nexus required by § 922(g). The law in this circuit, however, clearly allows the interstate nexus element of § 922(g) to be established by expert testimony. *See United States v. Bonavia*, 927 F.2d 565, 567 n.2 (11th Cir. 1991) (recognizing that firearms expert may testify " — based on his examination of the weapons in question and his consultation of reference books — about where the particular weapons had been manufactured, to establish the required interstate nexus."). In addition, hearsay testimony by experts is permitted if it is based upon the type of evidence reasonably relied upon by experts in the particular field. *See* Fed. R. Evid. 703; *United States v. Cox*, 696 F.2d 1294, 1297 (11th Cir. 1983). Miller testified at trial, without objection from Floyd, that the information he gathered from the technical advisor was of the type reasonably relied upon by experts in his field. Moreover, Miller testified that he did not base his opinion concerning the place of manufacture of the ammunition exclusively on his conversation with the technical advisor. (R.5 at 13-14.) Rather, he testified that he examined the ammunition, consulted a Winchester catalog, and then, to verify the information he obtained, he contacted the technical advisor. (*Id.* at 16.) On these

facts, we conclude that the court did not abuse its discretion in admitting Miller's testimony. *See United States v. Gresham*, 118 F.3d 258, 266-67 (5th Cir. 1997) (permitting expert testimony to establish interstate nexus element of § 922(g) offense when ATF expert based testimony on discussions with manufacturers, corporate literature, and personal experience).

## C. Ineffective Assistance of Counsel

We will not consider Floyd's ineffective-assistance-of- counsel claim because this claim has not been presented to the district court and thus there is no ruling for us to review.

## IV. CONCLUSION

Since there was probable cause to arrest Floyd for public drunkenness, the court did not err in denying Floyd's motion to suppress. In addition, the court did not err in admitting Miller's testimony concerning the interstate nexus required by § 922(g). Because Floyd's ineffective-assistance-of-counsel claim has not been presented to the district court, we will not consider this claim.

AFFIRMED.