[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16380

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 19, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-20437-CR-PCH

UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

JARROD REED,
TERENCE FOREST, et al.,

                                                            Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(December 19, 2007)**

Before DUBINA and MARCUS, Circuit Judges, and PROCTOR,* District Judge.

_____

*Honorable R. David Proctor, United States District Judge for the Northern District of Alabama,
sitting by designation.

PER CURIAM:

Appellants Jarrod Reed ("Reed"), Iramm Wright ("Wright"), Gregory

Penson ("Penson"), and Terrence Forest ("Forest") appeal their various convictions

and sentences relating to their participation in a scheme to rob an alleged narcotics

house. For the reasons stated below, we affirm in part and reverse in part.

## I. BACKGROUND

Agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and

local law enforcement officers initiated an investigation of violent drug traffickers

in Dade County, Florida. As part of this investigation, the ATF set up an operation

whereby Special Agent Espinosa ("Espinosa") would pose as a disgruntled drug

courier for Columbian drug traffickers and would locate individuals willing to help

him rob twenty to thirty kilograms of cocaine from a stash house. Confidential

Informant Eric Collins ("Collins") identified Wright as a potential robber and

arranged a meeting between Espinosa and Wright.

The first meeting between Espinosa, Wright, and Collins occurred on March

31, 2005. The government introduced into evidence a video tape of this meeting,

which shows Wright agreeing to assist Espinoso. Wright also agreed to get others

to assist him because two armed individuals would be guarding the house. A

second meeting between Espinosa and Wright occurred on April 8, 2005. Penson

2

was also in attendance at this meeting. Espinosa, Wright, and Penson discussed the specifics of the plan and the amount of cocaine involved (twenty to thirty kilograms). A third meeting between Espinosa, Wright, and Penson occurred on May 4, 2005, in which they scheduled the robbery for May 6, 2005, at 7 p.m.

On May 6, 2005, Collins, driving a Chevrolet Tahoe, picked up Penson and Wright in a mall parking lot in front of a McDonald's. At the time of the pick-up, both Penson and Wright were holding shopping bags. There were also officers stationed at the mall to see if Penson and Wright had people watching them. The officers noticed a Chrysler Pacifica drive into the parking lot and back into a space. Both the driver (Forest) and passenger (Reed) remained in the car until Reed got out and walked across the parking lot to the McDonald's. Penson and Wright were still waiting to be picked up and an officer testified that Reed made some sort of acknowledgment to Penson and Wright. As soon as Collins picked up Penson and Wright, Reed hurried back to the Pacifica and gestured towards the Tahoe, and the Pacifica followed the Tahoe out of the parking lot.

The Pacifica followed the Tahoe across town until it turned into a warehouse parking lot. The Pacifica continued past the warehouse and then did a u-turn and parked in front of the warehouse. At this time, officers arrested Penson and Wright and attempted to detain Reed and Forest. Reed and Forest tried to allude officers

but crashed into a parked car, at which time officers arrested Reed and Forest.

After arresting the four defendants, officers searched both cars. The car driven by Collins contained two shopping bags. One bag contained two loaded revolvers and a black jacket. The other bag contained gloves, a ski mask, a baseball hat, and boxer shorts. A search of the Pacifica yielded a loaded pistol as well as two cell phones. Both Penson and Wright possessed cell phones. By looking at the call logs on the cell phones, the officers were able to determine that Wright had been in contact with one of the cell phones located in the Pacifica on that day.

Following trial, a jury found Reed, Wright, Penson, and Forest guilty of Count 1 for conspiring to obstruct, delay, and affect interstate commerce by means of robbery, in violation of 18 U.S.C. §§ 1951 (b)(1), (b)(3), by planning to take cocaine from alleged narcotics traffickers by means of actual or threatened force, violence, and fear of injury, in violation of 18 U.S.C. § 1951(a).

The jury found Reed, Wright, Penson, and Forest guilty of Count 2 for conspiring to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; Wright and Penson guilty of Count 3 for attempting to possess with intent to distribute five kilograms of cocaine or more in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. §

4

2; Reed, Wright, and Forest guilty of Count 4 for using and carrying firearms during and in relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); Wright guilty of Count 5 for possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and Forest guilty of Count 6 for possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

## II. ISSUES

1. Whether there was sufficient evidence for a jury to find Wright guilty of a Hobbs Act conspiracy.

2. Whether there was sufficient evidence to support Reed and Forest's convictions for conspiracy to possess cocaine, Hobbs Act conspiracy, and using and carrying a firearm during and in relation to a crime of violence.

3. Whether the district court properly denied Reed and Forest's Motion to Suppress Evidence.

4. Whether Wright and Penson were properly sentenced.

## III. STANDARDS OF REVIEW

The sufficiency of the evidence supporting a criminal conviction is a question of law, and is reviewed *de novo*; however, the evidence is examined in the

5

light most favorable to the government, and all inferences and credibility choices must be in the government's favor. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005).

Rulings on motions to suppress evidence involve mixed questions of law and fact. The district court's findings of fact on a motion to suppress are reviewed for clear error; the district court's application of those facts is reviewed *de novo*. *United States v. Tokars,* 95 F.3d 1520, 1531 (11th Cir. 1996).

A district court's determination of drug quantity to establish the applicable base offense level under the Sentencing Guidelines is reviewed for clear error. *United States v. Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000).

## IV. DISCUSSION

1. *Sufficiency of the Evidence as to Wright*

First, Wright argues that there was insufficient evidence to convict him of a Hobbs Act conspiracy to rob because the entire scheme was fictional and neither the drugs nor the drug courier actually existed. This argument fails; "[t]he fact that the intended victims and narcotics were fictional is irrelevant." *United States v. Taylor*, 480 F.3d 1025, 1027 (11th Cir. 2007) (affirming the Hobbs Act conviction of a defendant who "conspired to violently rob the stash house of a narcotics organization").

Second, Wright argues that there was insufficient evidence that a taking against one's will, which is an element of a Hobbs Act robbery charge, was actually planned. Wright alleges that a taking against one's will was not planned since Espinosa was in on the scheme and the drugs were to be taken from Espinosa. However, the record clearly reveals numerous pieces of evidence from which a reasonable juror could conclude that a non-consensual taking was planned. These pieces of evidence include: (1) a videotaped meeting between Wright and Espinosa indicating that the plan was to rob the stash house, not the courier; (2) Espinosa advising Wright that he would need to have assistance since the stash house was protected by armed guards; (3) Wright stating that he would make it "look as if they were on the house or they were on another courier and they just happened to hit it while [Espinosa] was inside;" and (4) Wright and his co-conspirators arriving at the house with three guns.

Since there was sufficient evidence that a non-consensual taking was planned and the fact that the drugs and drug courier were fictional is irrelevant, there was sufficient evidence to convict Wright of a Hobbs Act conspiracy to rob.

2. *Sufficiency of the Evidence as to the Convictions of Reed and Forest*

Reed and Forest challenge their convictions for conspiracy to possess cocaine, alleging that the government failed to prove beyond a reasonable doubt

7

that they knew drugs were involved in the robbery. In order to support a conviction for conspiracy to possess cocaine, the government must prove that a conspiracy existed, that the defendant knew of it, and that, with such knowledge, he voluntarily joined it. *United States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994). Furthermore, the government must prove beyond a reasonable doubt not only that Reed and Forest "participated in an agreement to burglarize a house and rob it, but that the specific purpose of the robbery was to steal cocaine in order to distribute it." *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002).

In this case, both parties agree that the evidence against Reed and Forest is as follows: (1) Reed and Forest were possibly engaged in counter-surveillance; (2) Reed acknowledged Penson and Wright outside of McDonald's; (3) Reed and Forest followed Wright and Penson to the warehouse; (4) Reed and Forest tried to leave the scene to avoid arrest; (5) there was a loaded gun in the car used by Reed and Forest; and (6) a cell phone in the car used by Reed and Forest had been used to talk to Wright on the day of the arrest. Thus, the issue is whether, given these facts, a reasonable juror could have found Reed and Forest guilty beyond a reasonable doubt of conspiracy to possess cocaine.

The facts above indicate a lesser level of knowledge than in prior cases in which this court has found that there was insufficient evidence of knowledge. *See*

8

*United States v. Martinez*, 83 F.3d 371 (11th Cir. 1996) (reversing the possession conviction of one of the defendants because there was insufficient evidence that the defendant knew that drugs were involved in the robbery in spite of the fact that the defendant (1) rode to the house with the primary defendant who had conspired with an undercover agent, (2) used a crowbar to enter the house, (3) was armed when he entered the house, and (4) attempted to leave the house with a suitcase full of cocaine).  Thus, the evidence at trial was insufficient to prove that Reed and Forest specifically knew that the purpose of the planned robbery was to steal drugs; accordingly, we reverse these convictions.

Reed and Forest also argue that there was insufficient evidence to convict them of a Hobbs Act conspiracy to rob and to convict them of using and carrying firearms during and in relation to a crime of violence or drug trafficking.  We do not address these arguments because the government conceded at oral argument that if we reverse the conspiracy to possess convictions we must also reverse the Hobbs Act conspiracy convictions and firearms convictions.  Therefore, in accordance with the government's concession, we also reverse these convictions.

3. *Motion to Suppress*

Reed and Forest allege that their arrest and the subsequent search of their car violated their Fourth Amendment rights, and thus, the district court erred in

denying their motion to suppress evidence at trial.[1]  Both the government and the defendants agree that there was not a valid search warrant, and thus, the officers who arrested Reed and Forest must have had probable cause in order for the arrest and subsequent search to be lawful.  Probable cause exists when law enforcement officers have facts and circumstances within their knowledge sufficient to form a reasonable belief that a suspect has committed or is about to commit a crime. *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002).

The facts and circumstances that existed at the time of the arrest were: (1) Wright had previously mentioned that he knew of other individuals who would help him with the robbery; (2) officers observed Reed and Forest conducting surveillance at the mall parking lot while Wright and Penson were waiting to be picked up; (3) officers observed Reed signal Wright and Penson as he walked into a McDonald's in front of the mall parking lot; (4) as soon as Wright and Penson were picked up by the confidential informant, Reed hurried back to the car and pointed at the Tahoe in which Wright and Penson were passengers; (5) Reed and Forest then followed the Tahoe to the scene of the arrest and parked on the street outside the warehouse; and (6) after Wright and Penson were arrested, Reed and

---

[1] Though we reverse Count 1, 2, and 4 as to Reed and Forest, we still must address their motion to suppress argument, as it affects Forest's remaining conviction—being a felon in possession of a firearm.

10

Forest attempted to leave the scene but crashed into another car. Thus, the issue is whether or not these facts and circumstances give rise to a reasonable belief that Reed and Forest had committed or were about to commit a crime.

We conclude that Reed's acknowledgment of Penson and Wright, who were known participants in a robbery scheme, as well as his and Forest's pursuit across town in a way such that the district court found that "the odds are so astronomical that this would just occur as a coincidence," created a reasonable belief that Reed and Forest had committed or were about to commit a crime. Thus, probable cause existed, and the district court correctly denied the defendants' motion to suppress.[2]

4. *Sentencing Issues*

Penson and Wright both argue that the district court erred by failing to adequately explain the reasons for their sentence as required by 18 U.S.C. § 3553(a).[3] In addition, Penson alleges that the district court erred in determining the quantity of the drugs involved, which unjustly increased his base offense level.

Sentencing requires two steps. First, the district court must consult the Sentencing Guidelines and correctly calculate the range that they provide. *United*

---

[2] Reed and Forest raise additional arguments on appeal that we need not address because they are only pertinent to the convictions we have already reversed.

[3] Reed and Forest also challenge their sentences, but we need not address these challenges because the only conviction that remains is Forest's firearm conviction for which the district court imposed the statutory minimum sentence.

*States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). Second, the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in order to determine a reasonable sentence. *Id.*

Penson and Wright point to 18 U.S.C. § 3553(c)(1), which requires the district court to set forth its reasons for imposing a sentence when the sentencing range exceeds 24 months. Furthermore, they point to this court's decision in *United States v. Parrado*, 911 F.2d 1567, 1572 (11th Cir. 1990), in which the court stated that "we conclude that a sentencing court should—when stating its reasons for imposing a particular sentence as required by § 3553(c)—tailor its comments to show that the sentence imposed is appropriate, given the factors to be considered in § 3553(a)." Penson and Wright allege that the comments made by the district court at sentencing do not meet this standard.

In sentencing Penson, the court heard Penson's statement of remorse and arguments from the parties regarding the § 3553(a) factors, which concerned the "nature and circumstances of the offense" and Penson's "history and characteristics." Additionally, the court considered the Guidelines range and the parties' argument regarding the appropriate sentence, which reflected another § 3553(a) factor, the "kind of sentences available." The court then stated that it had considered the facts and conclusions set forth in the pre-sentence investigation

12

report, thereby implicitly considering the nature and circumstances of the offense and the history and characteristics of Penson, and it found that Penson's sentence met the "goals of the sentencing requirements of § 3553(a)."

In sentencing Wright, the district court followed the proper procedure in that it calculated the Guidelines range in consultation with the Guidelines, and then it explicitly stated that it considered the statements of both parties, including letters written on Wright's behalf, the advisory Guidelines range, and the § 3553(a) factors. The court further stated that it had considered the facts and conclusions contained in the pre-sentence investigation report, thereby implicitly considering the nature and circumstances of the offenses and the history and characteristics of Wright. Furthermore, in explaining why a within-Guidelines sentence was appropriate, the court focused on Wright's history and characteristics, noting particularly that Wright had a "serious criminal history" and a "propensity for firearms."

Given that "nothing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors," the district court's imposition of Wright's sentence and Penson's sentence satisfied the requirements of § 3553(c). *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).

Penson further argues that the facts of the case indicated that thirty kilograms was to be divided among multiple parties, and thus they are not individually responsible for the full thirty kilograms. However, the jury found all three individuals to be part of a conspiracy to rob thirty kilograms of cocaine, and the fact that no individual would retain the entire thirty kilograms is irrelevant. The Sentencing Guidelines clearly indicate that criminal defendants are accountable for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [they] jointly undertook." 2 U.S.S.G. § 1B1.3 comment (n.2). Therefore, since the scope of the activity was to steal thirty kilograms, the district court did not clearly err in its quantity determination.

## IV. CONCLUSION

For the above stated reasons, we reverse Reed's and Forest's Hobbs Act convictions and their convictions for possession with the intent to distribute and using and carrying firearms during and in relation to a crime of violence. We affirm Wright's convictions, Penson's convictions, and Forest's conviction for possessing a firearm as a convicted felon. We affirm the defendants' sentences relating to the convictions which we have not reversed.

AFFIRMED in part; REVERSED in part.