[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 22, 2010
JOHN LEY
CLERK

No. 10-10397
Non-Argument Calendar
_____

D.C. Docket No. 6:09-cr-00034-JA-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTORELL REED,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

(October 22, 2010)

Before MARCUS, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Martorell Reed appeals his conviction for being a felon in knowing

possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1)

and 924(a)(2). Reed argues that the district court erred by denying his motion to

suppress the firearm found on his person during a warrantless stop and frisk. He

contends that because the police lacked reasonable suspicion to justify the stop

and frisk, his Fourth Amendment rights were violated. Upon review of the record and consideration of the parties' briefs, we find no reversible error and affirm Reed's conviction.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). We construe all facts related to the motion to suppress in the light most favorable to the party that prevailed before the district court. Id. Additionally, the district court, as factfinder, is entitled to substantial deference in reaching credibility determinations with respect to witness testimony. United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003). This is true regardless of whether the district court's credibility determinations were made explicitly or merely implied in its ruling. See United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002). "[W]e may affirm the denial of a motion to suppress on any ground supported by the record." United States v. Caraballo, 595 F.3d 1214, 1222 (11th Cir. 2010).

An officer does not violate the Fourth Amendment by conducting a "brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot." United States v. Hunter, 291 F.3d 1302, 1305–06 (11th Cir. 2002). A warrantless, investigatory stop is constitutionally permissible if two conditions are met:

> First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter . . . when the police officer reasonably

suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.

Arizona v. Johnson, --- U.S. ----, 129 S. Ct. 781, 784 (2009). "An investigatory stop must be justified at its inception, and its scope must be reasonably related to the circumstances that permitted the intrusion at the outset." United States v. Kapperman, 764 F.2d 786, 792 (11th Cir. 1985). Warrantless seizure of contraband during a lawful protective frisk is constitutionally permissible, if the "contour or mass makes [the contraband's] identity immediately apparent" to the searching officer. Minnesota v. Dickerson, 508 U.S. 366, 375–76, 113 S. Ct. 2130, 2137 (1993).

"[R]easonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989) (internal quotation marks omitted). On a level-of-suspicion spectrum, "reasonable suspicion" is "considerably less than proof of wrongdoing by a preponderance of the evidence," and even falls below the probable cause standard of "a fair probability that contraband or evidence of a crime will be found." Id. (internal quotation marks omitted). However, "[t]he officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" Id. (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968)).

3

When determining whether reasonable suspicion exists, courts must review the "totality of the circumstances" to ascertain whether the officer had "some minimal level of objective justification" to suspect legal wrongdoing. Id. (internal quotation marks omitted). "[A] series of acts, each of them perhaps innocent in itself . . . taken together [can] warrant[] further investigation." Terry, 392 U.S. at 22, 88 S. Ct. at 1880–81. Reasonable suspicion analysis is not concerned with "hard certainties, but with probabilities," and law enforcement officials may rely on "inferences and deductions that might well elude an untrained person . . . [because] the evidence thus collected must be seen and weighed not in terms of library analysis by scholars." United States v. Cortez, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). Rather, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Illinois v. Wardlow, 528 U.S. 119, 125, 120 S. Ct. 673, 676 (2000). In making these commonsense judgments, "[t]he stopping officer is expected to assess the facts in light of his professional experience and where there is at least minimal communications between officers, we look to the 'collective knowledge' of all officers in assessing this determination." United States v. Kreimes, 649 F.2d 1185, 1189 (5th Cir. July 1981) (citations omitted).[1]

The Supreme Court has identified several factors that might affect officers' reasonable suspicion calculus. For instance, "officers are not required to ignore

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Wardlow, 528 U.S. at 124, 120 S. Ct. at 676. For that reason, "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a Terry analysis." Id. Additionally, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Id. So too, a bulge in one's outer clothing might indicate the presence of contraband or a weapon. See Pennsylvania v. Mimms, 434 U.S. 106, 112, 98 S. Ct. 330, 334 (1977) ("The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer.").

At a hearing on the motion to suppress, Corporal John Park testified that he encountered Reed in a known high crime area and initiated a Terry stop after witnessing furtive "fight or flight" eye movement, as well as hand and body movements and positioning that indicated to the seventeen-year veteran of the Orange County Sheriff's Office that Reed was attempting to conceal or discard something as the officer approached. The district court credited Park's testimony and held that the stop was justified. Deferring to this credibility determination as we must, we cannot say that the district court clearly erred in making its factual findings or that it erred in reaching its legal conclusion. Park was able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' of criminal activity," and did not violate the Fourth Amendment when he stopped Reed. See Wardlow, 528 U.S. at 123–25, 120 S. Ct. at 676–77 ("Even in Terry,

5

the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. . . . Terry recognized that the officers could detain the individuals to resolve the ambiguity." (citations omitted)).[2]

Reed also argues that his Fourth Amendment rights were violated when he was frisked. Specifically, he contends that Park never personally reviewed the be-on-the-lookout ("BOLO") message, out of which this incident arose. The BOLO message indicated that a shotgun and an AK-47 could be found in a car similar to that in which Reed had been a passenger. Reed argues that if Park had personally reviewed the BOLO message, his search would have been constitutionally unreasonable, because "no reasonable law enforcement [officer] would have believed that weapons of this type would be concealed in the suspect[']s waistband."

However, this argument is unconvincing. The Fourth Amendment permits officers to frisk lawfully stopped individuals if they "reasonably suspect that the person stopped is armed and dangerous." Johnson, --- U.S. at ----, 129 S. Ct. at 784. As the Supreme Court noted in Terry,

> where nothing in the initial stages of the encounter serves to dispel [an officer's] reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct

---

[2] On appeal, Reed argues that because Park's suspicion was based solely on an uncorroborated and unreliable anonymous tip, the stop and frisk were constitutionally impermissible. However, this argument fails because, as demonstrated above, several factors gave rise to Park's reasonable suspicion. Cf. Florida v. J.L., 529 U.S. 266, 270, 120 S. Ct. 1375, 1378 (2000) (deeming unjustified a stop and frisk where "the officers' suspicion that J.L. was carrying a weapon arose *not from any observations of their own* but *solely* from a call made from an unknown location by an unknown caller" (emphasis added)).

a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30, 88 S. Ct. at 1884–85. Applying this logic, this Court has held that an officer can justifiably frisk of an individual suspected of conspiring to distribute narcotics, merely because "[d]rug dealing is known to be extremely violent, and this was a reasonable way for the agents to protect themselves from a possible concealed weapon." United States v. Diaz-Lizaraza, 981 F.2d 1216, 1221 (11th Cir. 1993).

For the sake of argument, we accept Reed's position that Park cannot claim ignorance of the type of firearm reported in the BOLO message. In testimony credited by the district court, Park explained that he frisked Reed because of the suspect's furtive behavior; his eye, hand, and body movements that indicated an intent to hide or discard something; his presence in a high crime area; his loud and uncooperative behavior; and a "puffy shirt in [his] waist line area." These factors alone are sufficient to justify a frisk. The possibility that Reed had just left a car in which an AK-47 and shotgun were located certainly would not undermine, and may even support, the conclusion that Park reasonably suspected Reed to be dangerous and armed with some sort of weapon, even if not a rifle or shotgun.

In light of all of these circumstances and for the reasons set out above, the district court did not err when it denied Reed's motion to suppress. We affirm Reed's conviction.

**AFFIRMED.**