[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16731
Non-Argument Calendar

_____

D.C. Docket No. 9:15-cr-80095-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KURT ZAMOR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 9, 2018)

Before WILLIAM PRYOR, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In 2014, Defendant Kurt Zamor attempted to ship a container from Florida to Haiti containing firearms and ammunition without providing written notice to the shipping company.  Before the container left the country, federal agents discovered its contents.  Defendant was arrested and charged with violating 18 U.S.C. §§ 554(a), 922(e), and 924(a)(1)(D) by attempting to knowingly deliver a container carrying firearms and ammunition to a common or contract carrier for shipment to an unlicensed person without giving written notice to the carrier.  After a trial, a jury found Defendant guilty and the district court sentenced him to 60 months in prison.  On appeal, Defendant challenges the admission of expert testimony from one of the Government's witnesses, the sufficiency of the evidence, and his sentence.  We conclude that the Government presented sufficient evidence to convict Defendant and that the district court did not err in its other rulings.  Accordingly, we affirm.

## I.    BACKGROUND

### A.    Factual Background

In April 2014, a gun store filed a multiple-sale report with the federal government stating that Defendant had recently purchased two guns within a five-day period.  An agent with Homeland Security Investigations, part of the Department of Homeland Security, forwarded that report to Customs and Border

Protection (CBP).  CBP identified a container ready to be shipped from the Port of Palm Beach to Haiti that was listed in the name of Defendant's father, Jean Zamor. After investigating further, CBP discovered that Defendant had purchased the container and decided to search it.

Searching through the 40-foot container, CBP agents found an SUV, mattresses, furniture, tires, and a variety of other items.  Towards the nose of the container (the end farthest from the doors) the agents found a tool bag, a toolbox, and a backpack, each containing guns or ammunition.  The tool bag contained a can full of ammunition of different calibers that had been mixed together.  The tool box was covered in plastic wrap and contained a variety of tools and, underneath those tools, the lower parts of disassembled guns (e.g., the stock and grip) that had been zip-tied together.  The backpack, which was also wrapped in plastic, was found inside an icemaker.  The backpack contained the upper parts of disassembled guns (e.g., the spring and the barrel) that had been zip-tied together and matched the lower parts found in the toolbox.  By the end, agents had found seven disassembled guns, one intact gun, and 561 rounds of ammunition.  Further research showed that, of the eight guns found, seven belonged to Defendant.  No guns or ammunition were listed on the contents list for the container.

3

Defendant, a former Jacksonville police officer, was living in Haiti at the time working for the United Nations. Agents told Defendant that there was a problem with his container, and he returned to the United States in August 2014 to resolve it. Upon being confronted about the guns and ammunition, Defendant claimed that they had been kept in a storage locker he owned along with other items he intended to ship to Haiti, but that the guns and ammunition were not meant to be shipped. He asserted that his pregnant girlfriend was supposed to have picked up the guns and ammunition and that he had hired movers to load the storage locker into the container but that he was not present when the container was being loaded. Defendant also admitted that he never followed up with his girlfriend to make sure she had picked up the guns and ammunition.

## B.    Procedural History

Defendant was arrested on May 27, 2015. Count I of the superseding indictment charged Defendant with violating 18 U.S.C. §§ 2, 922(e), and 924(a)(1)(D) by knowingly and willfully delivering or causing to be delivered a container with one or more firearms to a common or contract carrier for shipment in interstate and foreign commerce to a person not licensed as a firearm importer, manufacturer, dealer, or collector without providing written notice to the carrier. Count II charged violation of 18 U.S.C. §§ 2 and 554(a) for fraudulently and

4

knowingly attempting to export firearms and ammunition to Haiti in violation of § 922(e) and § 924(a)(1)(D). Defendant pled not guilty.

At trial, the Government presented testimony from a variety of witnesses. Federal agents testified about their investigation and search of Defendant's container. Defendant's father testified that Defendant owned the goods in the container, had arranged the shipping, and was the one who wanted the container shipped to Haiti; Defendant's father simply put his name on the paperwork. An eyewitness testified that Defendant was present while his storage locker was being loaded into the container and that the locker was empty when the movers finished. And a former Alcohol, Tobacco, Firearms and Explosives (ATF) agent testified that Defendant's guns and ammunition were worth significantly more in Haiti than in the United States. Although Defendant did not testify, the jury heard a recording of his initial interview with federal agents where he claimed to have been unaware that the guns and ammunition had been moved into the container.

After the Government presented its case in chief, Defendant moved for a judgment of acquittal on the basis that the Government had produced insufficient evidence. The district court denied the motion. Defendant did not present any witnesses in his defense, and, after resting, renewed his motion for a judgment of

acquittal.  The court again denied the motion.  The jury returned a verdict of guilty on both Counts I and II.

At sentencing, the Presentence Investigation Report (PSR) identified that U.S.S.G. § 2K2.1 applied to Count I and U.S.S.G. § 2M5.2 applied to Count II. Section 2M5.2(a)(1) set Defendant's base offense level at 26.  The PSR concluded that the recommended guideline range was 63 to 78 months imprisonment.  After considering both the PSR and the factors identified in 18 U.S.C. § 3553(a), the district court sentenced Defendant to 60 months for each count, with both sentences to be served concurrently.

Defendant filed a timely appeal challenging the district court's denial of his motion for judgment of acquittal, the admission of the Government's expert testimony, and his sentence.

## II.    STANDARD OF REVIEW

"We review a district court's denial of a motion for judgment of acquittal *de novo*."  *United States v. Seher*, 562 F.3d 1344, 1364 (11th Cir. 2009).  And when that motion is based on sufficiency of the evidence, "we review the sufficiency of the evidence *de novo*, drawing all reasonable inferences in the government's favor."  *Id.* (internal quotation marks omitted).  We must affirm if "a reasonable factfinder could find that the evidence established that the defendant was guilty

6

beyond a reasonable doubt." *Id.* When a defendant fails to articulate to the district court the specific sufficiency-of the-evidence claim raised on appeal, we review only for plain error. *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016); *United States v. Hunerlach*, 197 F.3d 1059, 1068 (11th Cir. 1999). To be reversible under plain-error review, the district court's error must have affected Defendant's substantial rights and "must be one that is obvious and is clear under current law." *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013) (internal quotation marks omitted).

We review a district court's ruling "regarding the admissibility of expert testimony and the reliability of an expert opinion" for abuse of discretion. *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc). We cannot reverse "unless the ruling is manifestly erroneous." *Id.* (internal quotation marks omitted).

And "we review the reasonableness of a sentence for abuse of discretion using a two-step process." *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014) (internal quotation marks omitted). First, we determine whether the district court committed any "significant procedural error." *Id.* Second, "we examine whether the sentence is substantively reasonable under the totality of the circumstances and in light of the [18 U.S.C.] § 3553(a) factors." *Id.*

7

## III.    DISCUSSION

### A.    The Government's Expert Testimony

Defendant argues that the Government failed to comply with Federal Rule of Criminal Procedure 16 by providing inadequate notice of former ATF agent Stephen Barborini's expected testimony and that Barborini's testimony was otherwise inadmissible.  Although the Government provided notice of Barborini's testimony before trial, Defendant asserts that the notice violated Rule 16 because it was untimely and inadequately explained what Barborini would testify to.  "Violations of Rule 16 will result in a reversal of a conviction only if such a violation prejudices a defendant's substantial rights."  *United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999) (internal quotation marks omitted).  Thus, "actual prejudice must be shown."  *Id.*  Even assuming that the Government's notice was defective in some way, Defendant does not explain how the alleged defects prejudiced his defense.  In fact, Defendant was given notice before trial that Barborini would be testifying about the value of firearms and ammunition in Haiti based on his experience as an ATF agent.  Defendant was able to cross-examine Barborini and could have presented a rebuttal witness, had he chosen to do so.  We conclude that Defendant has not shown actual prejudice from the allegedly defective notice.  *See id.* (holding that there was no actual prejudice where a

8

defendant was able to interview a witness during trial and had the opportunity to find a rebuttal witness).

Defendant also contends that Barborini's testimony was not relevant and that Barborini was unqualified to testify to the value of the guns in Haiti because his knowledge was stale and based on hearsay. At trial, Barborini testified that he had been an agent with the ATF for over 25 years and that his knowledge regarding the value of firearms and ammunition in Haiti was based on post-arrest interviews he conducted with persons caught trafficking arms to Haiti. Although many of these interviews had occurred years earlier, Barborini testified that he had more recent conversations about the value of firearms and ammunition in 2014 and 2015 with a person who runs a security company in Haiti. Based on this knowledge and experience, Barborini testified that, in Haiti, Defendant's guns were worth double to quadruple the U.S. purchase price and the ammunition was worth more as well. The district court ruled both that Barborini had established a sufficient basis for his testimony and that it was relevant to showing Defendant's potential motive for shipping the guns and ammunition to Haiti.

As to Defendant's argument that Barborini's information should have been more recent, that concern goes to the weight of Barborini's testimony, not its admissibility. As to the latter, an expert may rely on information from others if

9

that is the type of evidence reasonably relied upon by experts in his particular field. *See United States v. Floyd*, 281 F.3d 1346, 1349 (11th Cir. 2002). Finally, the testimony as to the value of the guns and ammunition in Haiti was relevant as it showed a potential motive for Defendant to attempt to ship these items to Haiti. Thus, we cannot conclude that any of the district court's rulings on these issues were erroneous.

## B. Sufficiency of the Evidence

Defendant argues that the Government presented insufficient evidence to convict him of violating 18 U.S.C. § 922(e).[1] To prove that Defendant violated § 922(e), the Government had to establish four elements: (1) that Defendant knowingly and willfully delivered or caused to be delivered a package or container containing firearms or ammunition to a common or contract carrier, (2) that the package or container was intended for transportation in foreign commerce, (3) that the package or container was intended to be transported to someone other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, and

---

[1] 18 U.S.C. § 922(e) states, in part:

> It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped.

10

(4) that Defendant did not provide written notice to the carrier that firearms or ammunition were being transported or shipped.  18 U.S.C. § 922(e).  Defendant argues on appeal that the Government provided insufficient evidence for elements 1, 3, and 4.[2]

First, Defendant contends that the Government failed to prove element 1:  that Defendant knowingly delivered the container carrying guns to a common or contract carrier.  Because the contents list for the container describes Monarch—the company Defendant used to ship the container—as a "forwarding agent," Defendant argues that, Monarch was not acting as a common or contract carrier.  "Common carrier" and "contract carrier" are not defined in § 922, so Defendant relies on 19 C.F.R. § 112.1, which defines "freight forwarder" separately from common and contract carrier—demonstrating, according to Defendant, that a forwarding agent is not a common or contract carrier.  Specifically, § 112.1 defines a "freight forwarder" as "one who engages in the business of dispatching shipments on behalf of other persons . . . in foreign or domestic commerce . . . and is authorized to operate as such by any agency of the United States."  That regulation also defines a "common carrier" as a "carrier owning or operating a . . . transportation line or route which undertakes to transport goods or merchandise for

─────────────────

[2]  Defendant concedes that the Government produced sufficient evidence for the second element.

11

all of the general public who choose to employ him," and a "contract carrier" as a carrier that does the same but only "for a specific person or group of persons" as authorized by the federal government. *Id.*

Because Defendant did not raise this particular issue before the district court, we review only for plain error. *See Baston*, 818 F.3d at 664. "For a plain error to have occurred, the error must be one that is obvious and is clear under current law." *United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012) (quoting *United States v. Carruth*, 528 F.3d 845, 846 n.1 (11th Cir. 2008). "An error is not obvious and clear when '[n]o Supreme Court decision squarely supports' the defendant's argument, 'other circuits . . . are split' regarding the resolution of the defendant's argument, and 'we have never resolved the issue.'" *Id.* (alteration in original) (quoting *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999)).

The accuracy of Defendant's contention is neither obvious nor clear. Neither the contents list nor the definitions in 19 C.F.R. § 112.1 (assuming they are even relevant to 18 U.S.C. § 922(e)) establishes that Monarch was not a common or contract carrier. The contents list states that Monarch is only acting as a forwarding agent "for export control and customs purposes"—not that Monarch is, categorically, a freight forwarder to the exclusion of being a common or contract carrier. Even if it did, our precedent dictates that "[w]hether a transportation

12

agency is a common carrier depends not upon its corporate character or declared purposes, but upon what it does." *Lone Star Steel Co. v. McGee*, 380 F.2d 640, 648 (5th Cir. 1967) (quoting *United States v. California*, 297 U.S. 175, 181 (1936)).[3]  And the Government presented sufficient evidence at trial for the jury to conclude that, under any definition, Monarch was acting as a common or contract carrier.  Monarch's employee, Kristine Teeters, testified that Monarch "contract[s] with people to . . . ship things to other countries."[4]  Thus, we find no error, plain or otherwise.

Defendant also argues that the Government presented insufficient evidence to prove that he "knowingly . . . deliver or cause to be delivered" the guns and ammunition in the container because he was unaware that such items had been

---

[3]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding all Fifth Circuit precedent prior to October 1, 1981.

[4]  Defendant also contends that the Government did not present sufficient evidence that he delivered the container to a common or contract carrier because the contents list refers to "Monarch Shipping Lines, Inc." but the letter of intent for the shipment identifies "Monarch Shipping Co. Ltd" as the shipping company.  In other words, Defendant argues that the presence of two different corporate entities precluded the jury from finding that one or the other was a common or a contract carrier.  This claim was not presented to the district court so we review only for plain error.  The Government need not have conclusively proven that only one of these two corporate entities was the common carrier.  *See United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995) ("[T]he evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." (internal quotation marks omitted)).  Instead, the Government merely needed to present enough evidence for a reasonable factfinder to conclude that either was, and the Government accomplished that.

placed in the container. *See* 18 U.S.C. § 922(e). Although Defendant labels his argument as pertaining to element 4 and its requirement that written notice be given to the common or contract carrier about the guns and ammunition, the substance of his argument goes to element 1.[5]

This argument was properly presented to the district court, so we apply *de novo* review. Nevertheless, the Government presented sufficient evidence that a reasonable factfinder could conclude beyond a reasonable doubt that Defendant knew the guns and ammunition were in the container to be delivered to Monarch. Defendant's father testified that, although he put his name on the shipping paperwork, Defendant was the one who wanted the container shipped to Haiti, that Defendant and Defendant's friend filled out the shipping paperwork, that Defendant owned the container, and that Defendant was the one who paid to have it shipped. Defendant admitted to investigators that the guns in the container were his. Customs officer Clayton Kimball testified that, when he and his team searched the container, they found guns and ammunition stored in three separate locations: a tool bag, a toolbox, and a backpack. Most of the guns had been taken apart, and

---

[5] To the extent Defendant does raise the issue that the Government presented insufficient evidence that he failed to provide written notice to Monarch, that issue is abandoned because Defendant failed to develop it. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that a claim was abandoned where the defendant's brief contained only "passing references" to the claim).

14

the guns in the toolbox had been concealed under the tools.  The gun parts were separated into upper (e.g., the spring and barrel) and lower parts (e.g., the stock and grip), with the upper parts kept in the tool box and the lower parts stored in the backpack.  Officer Kimball further testified that the ammunition was loose, so different calibers had been mixed together.  Officer Kimball also observed that the guns and ammunition had been stored in such a way that made them harder to detect with x-ray technology, as they appeared to be loose pieces of metal instead of guns.  Defendant stated that he was familiar with that technology in his interview with federal officers.  Finally, Barborini testified that the guns were significantly more valuable in Haiti than in the United States.

Defendant asserted at trial that he was unaware that the guns and ammunition had been placed into the container because he was not present when the container was being loaded and he understood that his girlfriend was to have removed the guns and ammunition prior to the loading of the container.  But Zharellis Holmes testified that she was at Defendant's storage locker when it was being loaded into the container, and she observed that Defendant was also present, that Defendant was "directing" those who were helping move items into it, and that the locker was empty once the container had been loaded.  Witness testimony also

15

established that Defendant's girlfriend was around five-months pregnant at the time and that the toolbox alone weighed over 80 pounds.

Viewing these facts in the light most favorable to the Government, a reasonable factfinder could conclude beyond a reasonable doubt that Defendant knowingly and willfully placed the guns in the container to be shipped to Haiti. The Government presented evidence from which the jury could conclude that Defendant was involved in every aspect of attempting to ship the guns to Haiti— from buying the guns and the container to completing the paperwork and loading the guns and ammunition into the container—and that he had a motive to do so.

Finally, Defendant argues that the Government presented insufficient evidence for the jury to conclude under element 3 that Marie Gilles—the woman Defendant attempted to ship the container to—was not licensed as an importer, manufacturer, dealer, or collector. Defendant contends that the Government had to prove that she was not licensed in Haiti and that the Government failed to present any evidence on this issue. Because Defendant raised this issue in the district court in an untimely motion for a judgment of acquittal after trial, we review only for plain error. *United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015) ("If the motion was untimely, then the argument is forfeit, and we must review its

16

denial by the district court only for plain error, not *de novo*."); *United States v. Martinez*, 83 F.3d 371, 376 n.5 (11th Cir. 1996) (same).

Defendant asserts that the "license[ ]" referred to in 18 U.S.C. § 922(e) is a Firearms Convention Import Certificate defined in 15 C.F.R. § 748.12 and issued by the government of Haiti. But Defendant cites no case, statute, or other authority to support this. Thus, there can be no plain error as to this issue. In fact, current law indicates that the license mentioned in § 922(e) is a federal firearms license. *See* 18 U.S.C. § 921(a)(9)–(11), (13) (defining "licensed importer," "licensed manufacturer," "licensed dealer," and "licensed collector" to mean persons "licensed under the provisions of this chapter"); *id.* § 923(a)–(b) (requiring any persons importing, manufacturing, dealing, or collecting firearms to obtain a license from the Attorney General); *see also United States v. Focia*, 869 F.3d 1269, 1279 (11th Cir. 2017) (affirming conviction under 18 U.S.C. § 922(a)(5)[6] because a reasonable jury could have found that the defendant sold a firearm to a person who "did not have a federal firearms license at the time of the purchase"); *United States v. Fries*, 725 F.3d 1286, 1292–93 (11th Cir. 2013) ("The plain language of § 922(a)(5) clearly requires the government to prove, as an essential element of the

---

[6] In language similar to 18 U.S.C. § 922(e), § 922(a)(5) makes it unlawful for any person to transfer a firearm to an out-of-state resident "other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector."

17

offense, that neither the defendant nor the nonresident to whom the defendant allegedly transferred the weapon possessed a[ ] [federal firearms license] at the time of the transfer.").  And the Government presented evidence from Tina Anderson, who handles federal licensing as part of her job for the ATF, that Ms. Gilles was not federally licensed as an importer, manufacturer, dealer, or collector. Because it is not "obvious and . . . clear under current law" that the Government had to prove that Ms. Gilles lacked a Firearms Convention Import Certificate from Haiti and the Government presented evidence showing Ms. Gilles lacked a federal firearms license, we find no plain error.  *See Madden*, 733 F.3d at 1322 (internal quotation marks omitted).

Altogether, we conclude that the Government presented sufficient evidence for a reasonable factfinder to conclude beyond a reasonable doubt that Defendant violated 18 U.S.C. § 922(e) for Count I.  Because the Government presented sufficient evidence to convict Defendant of Count I, there was also sufficient evidence for the jury to convict on Count II for willfully violating § 922(e).

## C.    Sentencing

Finally, Defendant contends that the district court erred when it sentenced him to 60 months imprisonment—a sentence below the recommended guidelines range of 63 to 78 months.  First, Defendant argues that the appropriate guideline

18

for Count II (violation of 18 U.S.C. § 554(a)) was U.S.S.G. § 2M5.2(a)(2), which set a base offense level of 14, and that the district court erred in following § 2M5.2(a)(1), which set a higher base offense level of 26.[7]  Defendant, however, did not raise any objection to the district court applying § 2M5.2(a)(1) at sentencing, so we review only for plain error.  *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011).  And we find no such error. Section 2M5.2(a)(2) does not apply because Defendant attempted to ship more than two non-fully automatic small arms and more than 500 rounds of ammunition.

Second, Defendant argues that the district court's sentence was substantively unreasonable because the application notes for § 2M5.2 indicate that a court should consider a downward departure where the conduct was not harmful to the foreign policy or security interests of the United States.  Yet the district court took into consideration the factors in 18 U.S.C. § 3553(a) and varied downward from the recommended guidelines range.  We may only vacate a sentence if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case," *United*

---

[7] U.S.S.G. § 2M5.2(a)(2) is an exception to § 2M5.2(a)(1) that lowers the base level to 14 "if the offense involved only (A) non-fully automatic small arms (rifles, handguns, or shotguns), and the number of weapons did not exceed two, (B) ammunition for non-fully automatic small arms, and the number of rounds did not exceed 500, or (C) both."

19

*States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted), and we find no reason to conclude that the district court made such an error here.

   **AFFIRMED.**