**UNITED STATES of America,**

v.

**Alexei GOMEZ, et al., Defendants.**

**Case No. 11–20304–CR.**

United States District Court, S.D. Florida.

Aug. 31, 2011.

Amanda Perwin, U.S. Attorney's Office, Miami, FL, for United States of America.

Michael Dennis Walsh, Attorney at Law, Miami, FL, for Defendants.

### ORDER ON MAGISTRATE JUDGE'S REPORT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon the Defendant's First Particularized Motion to Suppress Evidence and Brief in Support. (D.E. 37.)

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

This matter was referred to Magistrate Judge Edwin G. Torres, who, on July 22, 2011, held an evidentiary hearing on the Motion. On August 12, 2011, the Magistrate Judge issued a Report setting forth his findings of fact and conclusions of law and recommending that the Motion be denied. (D.E. 46.)

The parties were afforded the opportunity to file objections to the Magistrate Judge's Report; however, no objections were filed. After conducting a *de novo* review of the record, it is hereby

ORDERED AND ADJUDGED that the Magistrate Judge's Report (D.E. 46) is RATIFIED, ADOPTED, AND AFFIRMED: Defendant's First Particularized Motion to Suppress Evidence (D.E. 37) is DENIED.

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court on Defendant Alexei Gomez ("Defendant")'s First Particularized Motion to Suppress Evidence and Brief in Support ("Motion"). [D.E. 37]. The Court has reviewed the Motion, the Government's response in opposition [D.E. 41], and held an evidentiary hearing regarding this Motion on July 22, 2011. Initially, the Court limited briefing to only the Government's response [D.E. 40]; however, during the hearing, the Court gave Defendant the option to file a reply with respect to certain issues raised during the hearing. Instead, Defendant chose to rest on his Motion and argument presented. The Court's decision rests on the following facts gleaned from the papers filed by the Parties and those presented during the July 22, 2011 evidentiary

hearing. For the following reasons, Defendant's Motion should be **DENIED**.

## I. FINDINGS OF FACT

On April 5, 2011, law enforcement agents ("agents") seized approximately two (2) kilograms of cocaine at the DHL hub located in Miami, Florida. The agents investigated a package that contained unusually high densities when scanned by X-RAY; a subsequent canine unit alerted agents that this package contained narcotics. With their suspicions sufficiently piqued, agents opened the package to investigate its contents. The package contained a horse saddle that, when drilled, revealed a white substance. This substance field tested positive for cocaine. The shipment originated in San Jose, Costa Rica sent from a shipper/exporter Servicio Internacionals De Carga and was addressed to the Defendant at a business address located in Miami, Florida.

With this information, agents searched the Florida Driver and Vehicle Information Database to reveal Defendant's home address and driver license picture. The agents also investigated the recipient address and uncovered it was a real estate business, Choice One Realty ("Choice One"), that employed the Defendant. The agents then decided to reseal the package and attempt a controlled delivery to the Defendant later that afternoon. Prior to attempting the delivery, however, the agents did not secure an anticipatory search and seizure or arrest warrant.

At approximately 4:30 p.m., an agent delivered the package to Choice One while the remaining agents staged around this location waiting for somebody to pickup the package. Eventually, agents asked Choice One's manager to call the Defendant and inform him that a package had

arrived for him; the manager left Defendant a voicemail message. At about 7:30 p.m., an individual matching the description of, and operating a vehicle registered to, the Defendant appeared at Choice One. He picked up the package, placed it in his vehicle and drove away.

The agents followed close behind the Defendant. Likely a result of the predominance of single lane roads in their vicinity, all parties involved soon became aware of each other's presence. The Defendant's driving behavior showed signs of distress and turned erratic with frequent "heat runs"[1] and unnecessary doubling back u-turns. An unintended consequence of this behavior was, however, that agents were able to observe Defendant operating his cell phone as the line of vehicles passed by one another after each u-turn. This erratic driving, coupled with the fact that Defendant was driving away from his residence, motivated the agents to effect a stop. The agents immediately handcuffed the Defendant, secured him in an agent's vehicle and informed him he was arrested because of the package.

After securing Defendant's vehicle, the agents conducted a search of the vehicle and recovered, among other benign objects, an operational Metro PCS cellular phone ("cell phone"). This cell phone is capable of making calls, receiving voice mail, sending text messages and taking photographs, but it is not a "smartphone." As such, Defendant's cell phone is not, for instance, an iPhone that can utilize computerized functions like accessing the internet or maintaining sophisticated computer-like data storage capabilities. The agents testified that the cell phone was not internet capable.

1. As defined by the Government, "quick repeated turns in an effort to elude anyone following [the Defendant]."

Upon seizing the cell phone, Agent Randy McPhee ("Agent McPhee") reviewed its call log history and made a written record of each name and number for incoming and outgoing calls made during the preceding 24–48 hour period. Afterwards, the cell phone was left powered "on" and placed on the trunk of a vehicle at the scene of the arrest.[2]

At about this time, Defendant's cell phone, which rang audibly, began to receive several phone calls from a "Javier Blue" whose name appeared on the cell phone's caller ID in the agents' plain view. After the fourth or fifth unanswered attempt, Agent Marcos Olaniel ("Agent Olaniel") answered Defendant's ringing cell phone and engaged "Javier Blue" in conversation. "Javier Blue" asked, "do you have the package." After Agent Olaniel, posing as Defendant, responded "yes," "Javier Blue" quickly grew suspicious of his unfamiliar voice and terminated the call. "Javier Blue" called back several additional times to resume communication with Defendant but, each time, the call was terminated by either Agent Olaniel (to avoid detection) or "Javier Blue" (due to his suspicion). Because of these problems, Agent Olaniel changed mediums of communication and continued the conversation by text message.

"Javier Blue" proved receptive to text messages and asked the "Defendant" to deliver the package to his residence. Because Agent Olaniel was at an informational disadvantage, he devised a ruse explaining that, due to engine problems, "Javier Blue" would have to pick up the package directly from their location.

Approximately thirty minutes later, "Javier Blue" arrived in a Toyota Corrola along with two additional individuals.

"Javier Blue" exited this vehicle, walked towards Defendant's vehicle, surveyed the surrounding area, and then attempted to walk back to the Corrola. The agents then appeared and detained all three individuals. "Javier Blue" was identified as co-defendant Javier Almeida. Co–Defendant Almeida gave agents his consent to examine his cell phone and discovered that, among other things, his cell phone matched the number of "Javier Blue." Based on this information, the agents arrested Javier Almeida.[3] Thereafter, the agents photographed Defendant's cell phone to memorialize their text message exchange with Javier Almeida.

On April 6, 2011, Defendant was charged by criminal complaint for one count of knowingly and intentionally conspiring to import 500 grams or more of cocaine into the Unites States in violation of 21 U.S.C. § 952(a) and § 960(b)(2)(B). [D.E. 3]. Seven days later, Magistrate Judge Patrick White issued an after-the-fact search and seizure warrant for Defendant's cell phone. The scope of this warrant was broad and included the phone itself, as well as all phone numbers, any records relating to outgoing/incoming calls, voicemail messages, any contacts stored on the cell phone, all instant/text messages, and any picture/videos stored on the cell phone.

On July 11, 2011, Defendant moved to suppress evidence seized by agents, along with fruits thereof, pursuant to a purportedly unlawful warrantless search of Defendant's cell phone in violation of the Fourth Amendment. Specifically, Defendant seeks to suppress the following evidence: 1) the cell phone's call log history; 2) the name "Javier Blue" that appeared on the caller ID in plain view; 3) Agent

---

**2.** The record is unclear as to whether the phone rested on an agent's vehicle or the Defendant's.

**3.** The other two occupants of the Corrola were interviewed and released.

Olaniel's voice and text conversation with "Javier Blue;" and, 4) the photographic evidence of the Agent Olaniel/Javier Almeida text message conversation. In short, Defendant seeks to suppress all cell phone evidence obtained on April 5, 2011. Defendant maintains that the agents' warrantless search of his cell phone did not fall under a recognized exception to the Fourth Amendment. In response, the Government asserts that the agents conducted a valid warrantless search pursuant to the "search incident to arrest" and "exigent circumstances" exceptions. And, to the extent either exception is found unjustified, the Government contends the "independent source doctrine" remedies any purported constitutional misstep.

## II. ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. Amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Holmes v. Kucynda,* 321 F.3d 1069, 1082 (11th Cir.2003); *Groh v. Ramirez,* 540 U.S. 551, 572–73, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Thomas, J., dissenting) ("[O]ur cases stand for the illuminating proposition that warrantless searches are *per se* unreasonable, except, of course, when they are not.").

Because several legal principles are in play with respect to the warrantless search of Defendant's cell phone, we portion our discussion into five discrete parts: 1) standing; 2) the cell phone's caller ID in plain view—"Javier Blue" calls; 3) whether the warrantless search was reasonable under the search incident to arrest exception; 4) whether the warrantless search was reasonable under the exigent circum-

stances exception; and, 5) assuming the search was unjustified, whether the independent source doctrine cures any constitutional transgression.

### A. Standing: Do Fourth Amendment Protections Attach to Defendant's Cell Phone?

In a word, yes. And, the Government effectively concedes as much in its response. *See* [D.E. 41 at p. 6–8]. As noted by the Government, courts have held that an individual has a reasonable expectation of privacy in the call history of a cell phone. *See United States v. Finley,* 477 F.3d 250, 259 (5th Cir.2007) (finding legitimate expectation of privacy in call history of cell phone); *U.S. v. De La Paz,* 43 F.Supp.2d 370, 372 (S.D.N.Y.1999) (finding legitimate privacy expectation in the fact that calls were received and in the identity of the callers).

Courts have also recognized that an individual has a reasonable expectation of privacy in a cell phone's text messages. *See City of Ontario v. Quon,* —— U.S. ——, ——, 130 S.Ct. 2619, 2626, 177 L.Ed.2d 216 (2010) (finding expectation of privacy in text messages on cell phone); *Finley,* 477 F.3d at 259 (reasonable expectation of privacy in text message on cell phone); *United States v. Wall,* 08–60016–CR, 2008 WL 5381412, at *3 (S.D.Fla. Dec. 22, 2008) (noting that government did not contest that viewing of text messages on defendant's cell phone constituted a search).

As the weight of authority agrees that accessing a cell phone's call log or text message folder is considered a "search" for Fourth Amendment purposes, it would logically follow that an individual also has a reasonable expectation of privacy with respect to operational functions, such as making calls or exchanging text messages. The Government, though tenuously, seems to argue that the contrary result is more

appropriate. The argument relies on a line of cases that dealt with land line phones when the arrestee was not a party to the phone call. *See, e.g., United States v. Vadino,* 680 F.2d 1329, 1335 (11th Cir. 1982) (no privacy expectation implicated when agents answer another's land-line telephone while lawfully on the premises).

In *De La Paz,* however, this rationale was squarely rejected with respect to cell phones and the court concluded that a cell phone itself warrants Fourth Amendment protections due to the nature of the privacy expectation bestowed on it by its owner and the public generally. *Id.* at 372. We agree with *De La Paz* that the traditional land-line telephone cases are inapposite to the unique character of a cell phone call and that Fourth Amendment protections apply.

■ By synthesizing these various cases, this Court reaches the conclusion that the Defendant had a reasonable expectation of privacy in his cell phone as a whole. Because this Court affirmatively concludes that a cell phone search will trigger Fourth Amendment protections, we turn to whether the warrantless search of Defendant's cell phone fell into one of the recognized exceptions to the warrant requirement.

**B. The Cell Phone's Caller ID in Plain View—"Javier Blue" calls**

The agents arrested Defendant, searched him and his vehicle incident to arrest, discovered an operational cell phone close to Defendant, and seized it. That type of search and seizure is clearly permissible under the Fourth Amendment, and Defendant acknowledged as much during the hearing. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Arizona v. Gant,* 556 U.S. 332, 343, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009) (the "*Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."); *United States v. Fuentes,* ·368 Fed.Appx. 95, 98 (11th Cir. 2010) (interpreting *Gant* to permit the search of a vehicle and seize of items, including cell phones, incident to drug-related arrest). With respect to the Caller ID screen, Defendant contends that its warrantless search post-seizure violated the Fourth Amendment. The Government responds, however, that the cell phone rang independent of any action taken by the agents and that because the Caller ID displayed the caller's name—"Javier Blue"—in plain view, there was no "search" for Fourth Amendment purposes.

The agents testified that they placed Defendant's properly seized cell phone on the truck of a vehicle during the course of Defendant's arrest. The cell phone rang four to five times in close succession and, in each instance, the Caller ID displayed the name "Javier Blue." The agents learned this name solely by accident when it appeared on the display screen in plain view. Put differently, the agents did not manipulate the cell phone in any way to cause "Javier Blue's" name to appear. Moreover, Defendant proffers no contrary testimony. Because we find the agents' testimony credible on this point, the question turns on whether a name appearing on Defendant's caller ID display, through no fault or effort of the agents, is considered a search for Fourth Amendment purposes.

■ We find the answer by applying the "plain view" doctrine, which provides that agents may seize items if (1) the officers are lawfully in a position from which they view an object, (2) the incriminating character of the object is immediately apparent, and (3) the officers have a lawful right of access to the object.

*Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). But, while this doctrine permits the seizure of incriminating evidence, it does not authorize a warrantless search of the item for concealed evidence. *United States v. Miller,* 769 F.2d 554, 557 (9th Cir.1985).

■ The Supreme Court recently discussed this plain view exception and, relying on *Horton v. California,* noted that "law enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *Kentucky v. King,* — U.S. —, —, 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011) (citing *Horton v. California,* 496 U.S. 128, 136–140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). As noted in *Horton,* "[i]t is ... an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." 496 U.S. at 136, 110 S.Ct. 2301. Clearly, the agents lawfully stopped, detained Defendant and then seized his cell phone incident to his arrest. The fact that the agents observed Javier Blue's name on Defendant's cell phone clearly falls under the rubric of "plain view" and is thus there is no "search" of the cell phone's Caller ID for Fourth Amendment purposes. *Cf. United States v. Davis,* 787 F.Supp.2d 1165, 1172–73 (D.Or.2011) (plain view exception did not justify cell phone search where officers searched contents of phone rather than merely observing the number appear in plain view).

### C. Search Incident to Arrest Justified Call Log History Search

Defendant contends that the recent Supreme Court decision in *Arizona v. Gant* supports his position that the agents improperly searched his cell phone's call log

history incident to arrest because, once the agents seized his cell phone, any risk of injury to the agents or potential loss of evidence disappeared. In response, the Government maintains that, in effect, the present state of Fourth Amendment law permits a law enforcement agent to conduct an abbreviated perusal of relevant, arrest-related evidence on an arrestee's cell phone incident to an arrest. As applied here, the Government asserts that the agents were justified to search Defendant's recent call log history incident to his drug-related arrest because such a search was likely to provide evidence relevant to the Defendant's offense or arrest. Thus, the question presented here turns on the applicability of the search incident to arrest doctrine with respect to the Defendant's cell phone call log history when seized by agents incident to a drug-related arrest.

■ The search incident to arrest exception is a long standing exception to the warrant requirement. *See Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914). This exception permits the search and seizure of any evidence within an arrestee's " 'immediate control,' " meaning "the area from within which he might gain possession of a weapon or destructible evidence," incident to arrest. *See Chimel,* 395 U.S. at 763, 89 S.Ct. 2034. This is a well-recognized exception to both the probable cause and warrant requirements of the Fourth Amendment because, once a person is lawfully seized and placed under arrest, he has a reduced expectation of privacy in his person. *See, e.g., United States v. Robinson,* 414 U.S. 218, 233–24, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (upholding search of closed cigarette package on arrestee's person); *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (valid search of an arrestee's clothes); *New York v. Belton,* 453 U.S. 454, 462–63, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (val-

id search incident to arrest of defendant's jacket found inside passenger compartment, notwithstanding that officer unzipped pockets and discovered cocaine). This reduced expectation of privacy also applies to vehicles, though to a lesser degree. *See Gant,* 129 S.Ct. at 1719 (holding the *"Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.").

■■■ The rule, as expressed in *Chimel,* was deemed necessary because an arresting officer had an immediate need to remove any weapon the arrestee may have to resist arrest or escape, and the need to prevent concealment or destruction of evidence. 395 U.S. at 763, 89 S.Ct. 2034. Since *Chimel,* however, the Supreme Court has repeatedly made clear that a showing of necessity, either for officer safety or destruction of evidence, is not required to justify an officer's search incident to arrest. *See, e.g., Robinson,* 414 U.S. at 235, 94 S.Ct. 467 (rejecting suggestion that "there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority" to conduct a search incident to arrest). Moreover, because vehicles present a unique situation to arresting officers, they are deemed justified to conduct a "search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *See Gant,* 129 S.Ct. at 1719 (quoting *Thornton v. United States,* 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d

905 (2004)). But, by narrowing *Belton,* the *Gant* opinion clarified the scope of a vehicle search by stating, "[agents] may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense or arrest." *Gant,* 129 S.Ct. at 1723.

The exception for warrantless searches incident to arrest is thus quite broad, even after *Gant.* Its justification is best explained by the belief that:

> There is nothing irrational about broader police authority to search for evidence when and where the perpetrator of a crime is lawfully arrested.... Moreover, it is not illogical to assume that evidence of a crime is most likely to be found where the suspect is apprehended.

*Thornton,* 541 U.S. at 630, 124 S.Ct. 2127 (Scalia, J. concurring).

■■■ While *Gant* signaled a retraction from the ever-expanding line of *Belton* cases in the vehicle context, it is still well established that any objects found on an arrestee's person, on his clothing, on any area within his immediate control, may be searched by law enforcement, *with or without* any reason to suspect that the person is armed or carrying contraband. *See, e.g., United States v. Jackson,* 377 F.3d 715, 716 (7th Cir.2004) (citations omitted). Post-*Gant,* of course, a vehicle search incident to arrest is limited to the arrestee's "reaching area" unless there is reason to believe evidence of the arrest exists.[4] Historically, and most analogous

---

4. Significantly, *Gant* distinguishes a traffic-related arrest from, for instance, a drug-related vehicle arrest because, in the traffic-arrest context, an officer's justification to conduct a broad search is limited. In effect, *Gant* revised *Chimel* and *Belton* to condition a vehicle search incident to arrest on an actual reason

to search because otherwise it gave "police the power to conduct such a search when an individual [was] caught committing a traffic offense, when there [was] no basis for believing evidence of the offense might be found in the vehicle, [and created] a serious and recur-

**1144**

to the search at issue here, the broad grant of authority to search includes highly private articles on a person like a wallet or purse,[5] a briefcase,[6] a backpack or personal bag,[7] an address book or organizer,[8] highly private places like a person's home closet[9] or his groin area,[10] or even highly unusual things like a person's bicycle handlebar.[11] Not unlike these highly private items searched in similarly private areas, it is undisputed that, even post-*Gant*, a cell phone found "close to [the] Defendant" is also subject to a search incident to arrest because it was seized in the arrestee's "reaching area." *Gant*, 129 S.Ct. at 1719. The only material limitation in the breadth of this so-called "limited exception" is its "temporal and spatial limitation on searches incident to arrest, excusing compliance with the warrant requirement only when the search 'is substantially contem-

poraneous with the arrest and is confined to the immediate vicinity of the arrest.'" *Kucynda*, 321 F.3d at 1082 (Eleventh Circuit quoting *Belton*, 453 U.S. at 465, 101 S.Ct. 2860, and holding that search of bedroom invalid as incident to arrest where not contemporaneous with or conducted in the vicinity of the arrest); *see, e.g., United States v. Wells*, 347 F.3d 280, 287 (8th Cir.2003) (search of automobile invalid as incident to arrest when vehicle first driven to station after driver arrested before search conducted). This means that when the temporal and spatial requirements of the search incident to arrest exception are not present, then a search without probable cause and without a warrant are invalid under the Fourth Amendment's *per se* rule. *See, e.g., United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (warrantless search of a locked

ring threat to the privacy of countless individuals." *Gant,* 129 S.Ct. at 1720.

**5.** *See, e.g., United States v. Richardson,* 764 F.2d 1514 (11th Cir.1985) (search of wallet and papers found on defendants' person validly seized in search incident to arrest); *United States v. Sonntag,* 684 F.2d 781 (11th Cir.1982) (search incident to arrest may properly extend to personal property such as a wallet found on the person of the arrestee); *United States v. Ziller,* 623 F.2d 562, 563 (9th Cir.1980) ("[A] search of the person which produced the wallet being permissible under *Chadwick*, a search of the contents of the wallet is likewise permissible as being an incident to and a part of a personal search.").

**6.** *See, e.g., United States v. Ivy,* 973 F.2d 1184, 1187 (5th Cir.1992) (search of briefcase valid as incident to arrest); *United States v. Johnson,* 846 F.2d 279, 282–84 (5th Cir.1988) (same); *United States v. Herrera,* 810 F.2d 989, 990–91 (10th Cir.1987) (same).

**7.** *See, e.g., United States v. Rosenthal,* 793 F.2d 1214, 1232 (11th Cir.1986) (search of bag valid as incident to arrest because defendant moved toward it as he was arrested); *United States v. Richardson,* 121 F.3d 1051, 1056 (7th Cir.1997) (search of shaving bag

found in passenger compartment of vehicle valid as incident to arrest); *United States v. Maldonado–Espinosa,* 968 F.2d 101, 104 (1st Cir.1992) (search of carry-on bag valid as incident to arrest because it was within reach of arrestee).

**8.** *See, e.g., United States v. Weaver,* 433 F.3d 1104, 1105 (9th Cir.2006) (search of personal organizer found behind driver's seat of vehicle valid as incident to arrest).

**9.** *See, e.g., United States v. Nascimento,* 491 F.3d 25, 51 (1st Cir.2007) (search of closet incident to arrest valid because defendant had to acquire clothes from closet at the time of arrest); *United States v. Lucas,* 898 F.2d 606, 609–10 (8th Cir.1990) (search of closed kitchen cabinet valid as incident to arrest because arrestee reached for it upon being arrested).

**10.** *See, e.g., Jackson,* 377 F.3d at 716–17 (search conducted by officer reaching into arrestee's groin area valid as incident to arrest).

**11.** *See, e.g., United States v. Currence,* 446 F.3d 554, 558–59 (4th Cir.2006) (search of bicycle handlebar for evidence valid as incident to arrest).

footlocker that was lawfully seized as incident to defendant's arrest could not be justified under this exception because it was too "remote in time or place from the arrest," and no other exigency existed).[12]

■ Also, an extremely intrusive search incident to arrest may also be limited by the reasonableness component of the Fourth Amendment. *See Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir.1997); *e.g., Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1269–71 (7th Cir.1983) (strip searches incident to arrest not reasonable); *cf. Evans v. Stephens*, 407 F.3d 1272, 1279 (11th Cir.2005) (en banc) (holding post-arrest strip searches violated Fourth Amendment).

■ Applying these current principles here, the Government is correct that, even under the post-*Gant* scope of a search incident to arrest, Agent McPhee's post-seizure decision to review and record Defendant's call log history was permissible. Plainly, the agents arrested the Defendant and, incident to that arrest, they seized a cell phone that was found close to the Defendant (i.e. within his "reaching distance"). While this alone is enough, the agents also had probable cause to suspect Defendant's cell phone contained evidence relevant to his arrest. Indeed, the salient facts make this clear: the agents intercepted a package carrying cocaine; Defendant placed this package in his vehicle; and, before agents effected a vehicle stop they observed Defendant on his cell phone.

Altogether, the agents had "reason[ ] to believe the vehicle contain[ed] evidence of the offense or arrest" and the Defendant was "within reaching distance of the passenger compartment at the time of the search." On these facts, the agents were clearly permitted to seize the cell phone (indeed, Defendant concedes as much) and, like a wallet, purse, bag, or cigarette case, look through the item at the scene to see if any evidence or other contraband could be found. Moreover, because Agent McPhee promptly reviewed the call log history at the scene, the search was temporally and spatially connected with the arrest. It was, in short, a classic search incident to arrest.

Defendant's primary argument against applying the exception here is that there was no necessity for the search to be conducted at that point. In other words, the search was not necessary to preserve officer safety by looking for weapons; the cell phone's contents obviously posed no threat of harm to the agents or threat of escape to Defendant once the cell phone was seized. Also, during the hearing, Defendant argued that the search was not necessary to prevent destruction of evidence because the agents already seized the cell phone. Indeed, it is true that Defendant was already in handcuffs, under arrest and placed in an agents' vehicle when the search took place. He was not a serious threat to destroy the potential evidence, say by grabbing the cell phone and smashing it to the ground, or by remotely accessing the cell phone and deleting its contents.[13]

---

**12.** *Chadwick* was abrogated on other grounds by *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (overruling *Chadwick* as to containers within a vehicle and holding police may search a container within a vehicle without a warrant if they have probable cause to believe that the container holds contraband or evidence). *Chadwick's* holding that a search incident to arrest must not be too remote in time or place is still good law.

**13.** The agents testified that they searched through the cell phone because they were concerned that the cell phone might be remotely "wiped," thus deleting the call log history. *Objectively speaking, we find this concern unconvincing* especially in light of the their admission that the cell phone lacked internet capabilities (consider: how do you remotely access and thus delete a cell phone that is incapable of making a remote connection?) Regardless, as we discuss herein, the

The problem for Defendant is that these attempts to distinguish this case from other search incident to arrest cases are absolutely foreclosed by the Supreme Court's post-*Chimel* line of incident to arrest cases, including most recently *Arizona v. Gant,* because "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." 129 S.Ct. at 1714.

Thus, even though the search of Defendant's cell phone may not have been justified by the agents' safety or Defendant's possible destruction of the call log history, that necessity or exigency analysis is beside the point. Even though we may disagree with the application of that post-*Chimel* line of cases to the ever-advancing technology of cell phones, or more specifically to the application of the *Belton* "any container" rule for searches incident to arrest (as limited by *Gant*), we are constrained to apply the law as the Supreme Court currently pronounces it. *See, e.g., Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").[14]

Our conclusion that the search incident to arrest exception must apply to the given facts is certainly in line with other pure "cellphone" cases that reached similar results. *See Finley,* 477 F.3d at 260 ("Police officers are not constrained to search only for weapons or instruments of escape on the arrestee's person; they may also, without any additional justification, look for evidence of the arrestee's crime on his person in order to preserve it for use at trial."). Searches of highly personal items like wallets or purses, which we consider analogous to an electronic storage device like a cell phone (especially its call log history), are permissible if searched incident to arrest regardless of need or exigency. *See Richardson,* 764 F.2d at 1527 ("The wallet and papers belonging to the defendants here were actually found on their persons during a valid search incident to an arrest. Such searches may properly extend to personal property such as a wallet found on the person of the arrestee."); *see also United States v. Cote,* No. 03CR271, 2005 WL 1323343, *6 (N.D.Ill. May 26, 2005) (upholding search incident to arrest of cellular phone's call log, phone book, and wireless web inbox). Thus, the agents, while at the scene of the arrest, had no need to obtain either Defendant's consent, or a warrant, before searching the cell phone's call log history.

The Eleventh Circuit has not addressed the limitations (or lack thereof) accompanying the search incident to arrest of a cell phone. *See United States v. Allen,* 416 Fed.Appx. 21, 27 (11th Cir.2011) ("Whether the warrantless search of a cell phone incident to arrest violates a person's Fourth Amendment expectation of privacy

point is really moot because necessity of exigent circumstances are not relevant to a search incident to arrest analysis under current Supreme Court authority.

**14.** While not specifically relevant here, we agree with the rationale pronounced in *State v. Smith* that a cell phone is not a "container" as defined in *Belton* because a cell phone is not "any object capable of holding another

object"—at least not in an tangible sense of the phrase "capable of holding." *See State v. Smith,* 920 N.E.2d 949, 954 (Ohio 2009) ("Even the more basic models of modern cell phones are capable of storing a wealth of digitized information wholly unlike any physical object found within a closed container. We thus hold that a cell phone is not a closed container for purposes of a Fourth Amendment analysis.")

is an unanswered question in this Circuit."). However, the Fifth Circuit, in the leading case on this issue, addressed the search of a cell phone incident to arrest in *Finley*, where officers arrested a defendant and a passenger in the defendant's car after effecting a traffic stop. Officers seized the defendant's cellular phone at the time of the arrest, and then transported the defendant to the passenger's residence; while at the residence, officers searched the call records and text messages on the defendant's cellular phone, and questioned him about those records and messages. *Finley* held that "no warrant was required since the search was conducted pursuant to a valid custodial arrest." *Id.* at 260. Granted, since *Gant,* the *Finley* opinion permitting a broad vehicle search incident to a traffic arrest may no longer be valid. However, because Defendant was stopped for a drug-related arrest the *Finley* reasoning remains good law as applied here. Thus, under that same reasoning in this case, even more so due to the presence of probable cause, Agent McPhee was entitled to search Defendant's cell phone call log history at the scene of the arrest and within a reasonable time thereafter.

Aspects of the *Finley* decision also focused on the exigencies involved in a situation where phone-related information stored on a cell phone or pager could potentially dissipate before law enforcement could obtain a warrant to search and retrieve that information. That was also true in a more recent case from the Fourth Circuit, *United States v. Young,* 278 Fed.Appx. 242 (4th Cir.2008). That case involved a cell phone search incident to drug-related arrest, where officers immediately searched through the text messages of cell phones seized from the personal possessions of two drug suspects. The officers searched through the messages to obtain any incriminating information. On a motion to suppress, the trial court denied the motion relying on the incident to arrest exception, and the Fourth Circuit affirmed, over the defendants' objections that a warrant was necessary before the officers reviewed the cell phones' contents. "Privacy rights in the phone are tempered by an arresting officer's need to preserve evidence. This need is an important law enforcement component of the rationale for permitting a search of a suspect incident to a valid arrest." *Id.* at 245 (citing *Robinson,* 414 U.S. at 226, 94 S.Ct. 467 and *United States v. Hunter,* 166 F.3d 1211 (4th Cir.1998) (finding that officers had authority to retrieve telephone numbers seized from a pager incident to arrest)).

Indeed, other district court cases have relied in greater part on exigent circumstances as justification for law enforcement's immediate search of a cell phone or pager for call history information. *See, e.g., United States v. Ortiz,* 84 F.3d 977 (7th Cir.1996) (warrantless search of pager to preserve electronic evidence); *United States v. Zamora,* 2006 WL 418390, *4, 2006 U.S. Dist. LEXIS 8196, *31–32 (N.D.Ga. Feb. 21, 2006) ("In this case the phones were reasonably believed by the investigating agents to be dynamic, subject to change without warning by a call simply being made to the instrument. With each call is the risk that a number stored would be deleted....."); *United States v. Mercado–Nava,* 486 F.Supp.2d 1271 (D.Kan. 2007) (interest in preventing destruction of evidence justified warrantless search incident to arrest of cell phone information); *United States v. Parada,* 289 F.Supp.2d 1291 (D.Kan.2003) (because stored telephone number data on cell phone was easily lost warrantless search of cell phone incident to arrest valid).

Others have also focused on the diminished expectation of privacy involved in that type of information to authorize im-

mediate searches. *See, e.g., U.S. v. Fierros–Alavarez*, 547 F.Supp.2d 1206, 1211 (D.Kan.2008) ("[D]efendant has not carried his burden of proving a reasonable expectation of privacy in the addressing information retrieved from the recent calls directory and in the names and numbers taken from the phonebook directory").

These cases also concern the search of a cell phone, but they are of marginal value when addressing strictly the proper scope of a search of incident to arrest. Under that exception, the existence of probable cause to search the device, the potential loss of information, or the diminished expectation in call history data are inconsequential. What is consequential is the location that the device was found incident to arrest and the time that the search was conducted.

That is not to say, of course, that the exigency concerns expressed in these cases are not warranted. They are. But exigent circumstances, to the extent that they are relied upon to the conduct an immediate search, also require an objective belief that probable cause exists to search the cell phone. *See, e.g., United States v. Santa*, 236 F.3d 662, 668 (11th Cir.2000) (citing *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir.1991) (en banc)); *see also infra* at 26–32. These earlier cell phone cases most likely could have made—and indeed often did make—a probable cause finding. Here, for now, we are focused on a search incident to arrest exception that, under the current state of the law, *does not* require a finding of probable cause.[15] We will not, and need not, blur the lines between these separate doctrines by mixing the two. The search of Defendant's

call log history was permissible first and foremost on the search incident to arrest doctrine.

Defendant next focuses on *Wall*, 2008 WL 5381412, for the bright-line proposition that "[t]he search of [a] cell phone cannot be justified as a search incident to lawful arrest." *Id.* at *3. Defendant predicates this "holding" on the now commonplace scenario of "agents searched two cell phones found on the defendant's person after his arrest." From those facts, Defendant maintains that *Wall* held the search incident to arrest was unlawful. It would seem, however, that such a holding would conflict with the present weight of authority on this issue (and our foregoing analysis).

Unsurprisingly, there is more to the *Wall* story than Defendant initial leads us to believe. A *critically* important fact, at least by this Court's reading, is that the agent searched the defendant's cell phone at the station house and thus the search took place subsequent to, *rather than incident to*, defendant's arrest. *Id.* at *3. Our reading is bolstered by *Wall's* conclusion that "[t]he DEA policy on rummaging through cell phones during the booking process cannot immunize an *otherwise unconstitutional search.*" *Id.* at *4 (emphasis added). Moreover, *Wall's* adherence to the "twin *Chimel* rationales—officer safety and evidence preservation," must be viewed through the post-*Gant* lens because in the vehicle context, such as here, "a search incident to arrest [is justified] when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Gant*, 129 S.Ct. at 1714. Obviously, had the agents here waited to search

---

**15.** As noted above, however, probable cause existed to search Defendant's cell phone due to the nature of his arrest, the agents' observation of Defendant using his phone immediately before his arrest and that cell phones are considered a known drug tool. *See United States v. Nixon*, 918 F.2d 895, 900 (11th

Cir.1990). Nevertheless, as will be noted below, the agents did not have an objective belief that information on the cell phone could have been lost absent an immediate search. *See United States v. Santa*, 236 F.3d at 669; *see also infra* at n. 16.

Defendant's cell phone until they were back at the station house, their search would have run afoul with the spatial and temporal safeguards that ultimately controlled the result in *Wall:* "[t]he search of the cell phone cannot be justified as a search incident to lawful arrest [because] ... Agent Mitchell accessed the text messages when Wall was being booked at the station house." *Wall,* 2008 WL 5381412 at *3. Because the agents here searched Defendant's cell phone contemporaneous with his arrest, *Wall* is distinguishable and unpersuasive.

In this particular case, the immediate search at the scene of the cell phone's call log history, limited to phone calls from the preceding 24–48 hours, in our view, was reasonable and appropriate under Supreme Court and Eleventh Circuit precedent. Thus, Agent McPhee conducted a valid search of Defendant's cell phone incident to arrest, and Defendant's Motion to Suppress the cell phone's call log history should be denied. *Wall* does not suggest otherwise.

To be clear, we do not suggest that the search incident to arrest exception gives agents carte blanche to search indefinitely each and every facet of an arrestee's cell phone. After all, a search incident to arrest must always fall within the reasonableness requirement of the Fourth Amendment and, more narrowly, relate to the evidence of the underlying offense or arrest. Courts applying this exception must also do so in a manner that faithfully enforces the temporal and spatial requirements of the doctrine. By doing so, the scope of a search will be limited as a practical matter. In the case of a cell or smartphone, for instance, a search contemporaneous with an arrest would not possibly allow a law enforcement officer at the scene of an arrest from downloading the entire content of the phone's memory. It would not allow much more than what

occurred here—a short, limited perusal of only recent calls to quickly determine if any incriminating evidence relevant to this drug crime can be identified.

 It should also be noted that, when a search incident to arrest goes beyond the strict temporal and spatial requirements of the doctrine, a different rule must govern. If officers do not contemporaneously search a cell phone, and instead seize it for later review at the station house the subsequent search could not and should not be deemed incident to arrest. *E.g., Wall,* 2008 WL 5381412 at *3, *5. It should instead fall under the *United States v. Place* line of cases, that hold that "[w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). A warrant must then be obtained. Because the search here was in fact contemporaneous with the arrest, *Place* has no bearing on the outcome.

We recognize that our conclusion contributes to the present uneasiness with respect to the specific scope of a search incident to arrest. Indeed, there is no question that "a short, limited perusal of recent calls to quickly determine if any incriminating evidence relevant to Defendant's drug crime can be identified" provides a less than ideal "bright-line" rule to guide law enforcement or the public alike. However, simply put, crafting such a specific rule for a cell phone is very difficult. This problem, of course, is exacerbated by the continually advancing technology and

**1150**

computing capabilities of hardware, such as "smart" phones, a concept more colloquially referred to as "Moore's law." [16] Perhaps the better alternative is to find a technological answer to this technological problem. We don't have the answer, but a good place to start is by a user password protecting the electronic device. Short of that practical step, the solution does not lie with a revamped analysis of the search incident to arrest doctrine.

### D. Exigent Circumstances Justified Answering the Cell Phone

As briefly discussed above, a recognized exigent circumstance is a situation in which there is "a realistic expectation that any delay would result in destruction of evidence." *United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). As couched by the Eleventh Circuit, the appropriate inquiry under this exception is whether the facts involved would lead a reasonable, experienced agent to find probable cause and believe that evidence might be destroyed before a warrant could be secured. *Santa*, 236 F.3d at 669 (quotations and citations omitted); *e.g.*, *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) ("there must be probable cause to believe that one or more of the other [exigent circumstances] factors justifying the entry were present and that in assessing the risk of danger, the gravity of the crime and likelihood that the suspect is armed should be considered.").

Other recognized situations in which exigent circumstances exist include: "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal or concealment of evidence; and "hot pursuit" of a fleeing suspect." *Santa*, 236 F.3d at 669 (quoting *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir.1983)). Ultimately, the Government bears the burden of proving the "exigent circumstances" exception by establishing both an exigency and probable cause existed. *United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir. 2002).

Defendant argues that no exigency existed to justify searching Defendant's cell phone because "[Defendant] was secured in the back of a police car [and thus] there was no risk of flight or injury. Moreover, he was unable to destroy any evidence that may have been contained on his cell phone." As clarified during the hearing, Defendant maintains that no exigent circumstance existed to either review the call log history or communicate with "Javier Blue."

The Government contends, however, that the combination of relevant facts support a finding of exigent circumstances to justify their "search" of Defendant's cell phone with respect to both answering "Javier Blue"'s phone call and thereafter communicating with him by text message.[17] We agree.

---

**16.** An observation made by Intel co-founder Gordon Moore in 1965. He noticed that the number of transistors per square inch on integrated circuits had doubled every year since their invention. Moore's law predicts that this trend will continue into the foreseeable future. Put differently, the computing power of today's cell phone, tablet PC, laptop, etc., is likely to be, at least, twice as powerful in two years.

**17.** The Government focuses its exigency argument on the "Javier Blue" phone call/text

message communication and thus relies on the "search incident to arrest" exception to justify the warrantless search of the call log history. Had the Government made an exigency argument for the call log history, however, we would have disagreed because the agents never proffered evidence to support an objective belief that the cell phone's call log history was ever at risk of being lost or destroyed. In fact, while agents testified to their speculation that a cell phone could theoretically be "wiped" remotely by an unknown

As discussed previously, the agents had probable cause to arrest Defendant and suspect that Defendant's ringing cell phone contained evidence relating to a drug trafficking conspiracy. Thus, the Government satisfied its burden with respect to probable cause.

As for the exigency, the relevant facts here compel an obvious answer. To quickly recap: 1) Defendant was a suspected drug courier who was observed driving erratically away from his residence; 2) agents observed him using his cell phone while following him; and, 3) after his arrest, a single caller—"Javier Blue"—made repeated attempts over a short period of time to reach the Defendant.

third party, each agent testified that they had no reason to believe that Defendant's specific cell phone was capable of remote deletion.

This Court is aware of other cell phone and pager cases concluding that call histories or even address book information is susceptible to being lost or destroyed. *See, e.g., Mercado–Nava*, 486 F.Supp.2d at 1278 ("The need to preserve evidence is underscored where evidence may be lost due to the dynamic nature of the information stored on and deleted from cell phones or pagers"); *United States v. Ortiz*, 84 F.3d at 984 ("Because of the finite nature of a pager's electronic memory, incoming pages may destroy currently stored telephone numbers in a pager's memory."). However, the Government fails to make a showing that would provide this Court a record basis to make such an exigency finding. Moreover, this weight of authority (duly cited by the Government) is unpersuasive and misplaced with respect to the technological capabilities of cell phones. As the court in the Eastern District of Missouri correctly explained in refusing to follow the reasoning from these earlier cases, the "service provider keeps records of the incoming and outgoing calls, ... and so the fact that they might not be stored on the phone itself does not mean they will be lost forever." *United States v. James*, No. 1:06CR134 CDP, 2008 WL 1925032 at *7 n. 3 (E.D.Mo. April 29, 2008) (upholding search of cell phone history and address book based on consent to search, but

Considering the context of his arrest, Agent Olaniel reasonably believed that these post-arrest phone calls would contain evidence of defendant's drug-related activity. "Javier Blue" confirmed this belief when he immediately asked Agent Olaniel whether the package was received. Thereafter, Agent Olaniel continued his conversation with Javier Blue (posing as the Defendant) to avoid detection and to lure Javier Blue to the agents. Agent Olaniel reasonably believed that "Javier Blue" called with respect to the drug conspiracy and, had he not answered the ringing call, the evidence may have been lost. Simply put, Agent Olaniel answered the cell phone in response to an exigent circumstance.

declining to do so under the exigent circumstances approach). We tend to agree with this position and recognize the ever-weakening argument that a modern cell phone, with its continually advancing technology, is at any risk of deleting its call history or text messages folder to make space for incoming calls or text messages—the memory capacity of a cell phone is far, far greater than that of an analogized two-decade older pager. Indeed, pagers pre-dated commercial internet usage; modern cell phones however are fully internet capable. The weakness of this analogy is glaringly obvious.

In the end, the Government proffers no evidence of exigency with respect to the call log history despite its burden to do so. *See, e.g., United States v. Morales*, 171 F.3d 978, 982 (5th Cir.1999) ("The government bears the burden of proving that an exigency existed."); *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir.2000) ("police officer's subjective belief that exigent circumstances exist is insufficient to make a warrantless search. Instead, as is normally the case for Fourth Amendment inquires, the test is objective: the government must establish the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that [an immediate search was necessary]."). Therefore, the exigent circumstance exception cannot be used to justify Agent McPhee's search of Defendant's call log history.

At least two other courts have agreed with this conclusion, with less compelling facts. In *De La Paz*, a factually analogous case, the court found that answering a defendant's cell phone following a drug-related arrest was justified by exigent circumstances. The relevant facts from *De La Paz* are:

> Agents lawfully (but without a warrant) seized a cellular phone incident to an arrest of a the defendant for his participation in a narcotics conspiracy. While the agents were processing the defendant, his cellular phone rang nine times. Each time, without a warrant or consent, the agents answered the cellular phone. And, each time, the caller asked for the defendant by his known to police drug dealer moniker. The defendant sought to suppress the inculpatory cellular phone conversations.

43 F.Supp.2d at 371. The court denied the motion to suppress concluding that even though the agents had no warrant to "search" the cell phone, it was reasonable for them to answer the ringing cell phone because "the agents had probable cause to believe that calls to [defendant's] cellular telephone, a common tool of the drug trade, would provide evidence of his criminal activity ... and it was not unreasonable for the agents to 'seize' that evidence without a warrant before it disappeared." *Id.* at 376. Put differently, while *De La Paz* recognized the privacy interest relative to cell phones and the prerequisite for a warrant before searching same, on balance the court resolved this conflict by concluding "[w]hen it is impracticable for government agents to get a warrant ... the Fourth Amendment does not require those agents to ignore potential evidence that might disappear[,]" such as a ringing phone call. *Id.* at 375–76; *see also State v. Carroll*, 322 Wis.2d 299, 778 N.W.2d 1, 14 (2010) (agents were permitted to answer a ringing cellular phone due to the exigent circumstances commensurate with the "fleeting nature of a phone call.")

■ Here, Agent Olaniel had an even more compelling reason to answer Defendant's cell phone because, unlike *De La Paz's* nine different calls, each call Defendant received was from the same caller— "Javier Blue." Thus, Agent Olaniel was not merely answering the phone of a potential, yet random, drug conspirator; Agent Olaniel had probable cause to believe he was answering the call of the recipient of Defendant's package. Accordingly, we conclude that Agent Olaniel lawfully answered Defendant's cell phone due to the "fleeting nature of a phone call" and the exigencies commensurate with the Defendant's ringing cell phone.

■ Because we have already concluded that exigent circumstances justified Agent Olaniel's answering Defendant's cell phone, we can see no reason to alter our conclusion with respect to continuing this conversation by text messages. Rather, the unique circumstances of this conversation—specifically "Javier Blue"'s rising suspicions and Agent Olaniel's risk of detection—naturally led Agent Olaniel to switch mediums of communication. Regardless, we find that it would be nothing less than counterintuitive to find that Agent Olaniel lacked justification to text message when he was justified to answer Defendant's ringing cell phone. Accordingly, we conclude that Agent Olaniel's warrantless usage of Defendant's cell phone, limited solely to communications with co-defendant Javier Almeida aka "Javier Blue," did not violate the Fourth Amendment.

■ Finally, Defendant contends that the photographs taken of the text message exchange between Agent Olaniel and "Javier Blue" should also be suppressed. The agents testified that they only photographed the text messages exchanged be-

tween Agent Olaniel and "Javier Blue" to memorialize their communication. Put differently, the record contains no evidence that the agents searched through other text messages or seized any other text message information other than those limited to communications between Agent Olaniel and "Javier Blue." We find the agents' testimony credible on this issue. Moreover, the Defendant presents no evidence to the contrary. Accordingly, because Agent Olaniel was permitted to send these text messages, we see no basis to suppress the photographs of same.

### E. Independent Source Doctrine

 The Government argued, in the alternative, that had the Court determined that the agents' cell phone search was unjustified, the independent source doctrine would cure any purported unlawful conduct. Under the independent source doctrine, even where a Fourth Amendment violation has occurred, evidence "obtained from a lawful source, independent of the illegal conduct" is admissible. *Davis,* 313 F.3d at 1303; *see also Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (explaining that the exclusionary rule is not implicated when the government learned of the challenged evidence from an independent source). The rationale for the independent source doctrine is that the government should be put "in the same, not a worse, position tha[n] [it] would have been in if no ... error or misconduct had occurred." *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (quoting *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).

However, since we conclude that the agents were entitled to "search" Defendant's cell phone under either the "search incident to arrest" or "exigent circumstances" exceptions, there is no reason to consider this issue, beyond acknowledging its likely application.

### III. CONCLUSION

As many courts have already opined, the scope of a cell phone search incident to arrest is presently in flux and, with every increasing advance to cell phone technology and memory capacity (not to mention the advent of new portable devices such as iPads), the question on how to deal with them will become increasingly important. However, in light of the current case law, we are precedent-bound to conclude that all of the information uncovered from Defendant's cell phone squared with the Fourth Amendment's present safeguards. Accordingly, Defendant's Motion to Suppress should be **DENIED.**

Pursuant to Local Magistrate Rule 4(b), the parties have until **August 22, 2011** to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. The Court finds good cause to expedite the objection period in light of the imminent trial date. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein, if any. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 12th day of August, 2011.